MARY L. WEATHERMAN v. DR. EDWARD R. WHITE

No. 7121SC5

(Filed 24 February 1971)

1. Physicians and Surgeons § 16— malpractice action — breast cancer — allegation of faulty diagnosis — sufficiency of evidence

   In a malpractice action, the *femme* plaintiff failed to establish that her family physician was negligent in not diagnosing a lump in her breast as cancerous, where (1) plaintiff's own evidence indicated that the defendant had exercised reasonable care and his best judgment in the diagnosis and (2) plaintiff's surgeon testified that the cancer which he found "was not near the surface, superficial area."

2. Physicians and Surgeons § 20— malpractice action — faulty diagnosis of breast cancer — causal connection between injury and malpractice

> Even if *femme* plaintiff had established her family physician's negligence in not diagnosing a lump in her breast as cancerous, her evidence nonetheless failed to show a causal connection between the negligence and the removal of her left breast, where all the testimony was to the effect that removal of the breast is the only proper treatment for breast cancer in women, regardless of the size of the cancer.

APPEAL by plaintiff from *Exum, J.,* 11 May 1970 Session, FORSYTH Superior Court.

This is a malpractice action brought by plaintiff against her former physician. All witnesses at the trial were presented by plaintiff. She testified herself and offered testimony of Dr. Starling, a general surgeon, Dr. Amparo, a resident in surgery at Forsyth Memorial Hospital, Dr. Dudley, a pathologist at said hospital, and Dr. Means, the surgeon who performed a radical mastectomy on plaintiff. Stipulations and plaintiff's evidence tended to show:

From 1956 until March of 1969, defendant was a general practitioner of medicine in the city of Winston-Salem. In 1956 defendant became plaintiff's family physician and examined and treated plaintiff regularly from 1956 until February of 1969. Early in 1967 plaintiff discovered a small lump in her left breast and called it to defendant's attention. Defendant examined the breast by palpation and advised plaintiff that the lump was not anything to be concerned about. Between 1967 and February of 1969, plaintiff expressed her concern about the lump to defendant on numerous occasions but defendant continued to reassure plaintiff that the lump was not harmful. In early February of 1969 plaintiff developed some female difficulty and defendant referred her to Dr. Means for examination and possible corrective surgery. On examination, Dr. Means concluded that plaintiff needed a partial hysterectomy and on 10 March 1969 plaintiff entered Forsyth Memorial Hospital under Dr. Means' care. In a routine preoperative examination Dr. Amparo examined plaintiff's breasts and reported to Dr. Means discovery of two lumps in plaintiff's left breast. Thereafter Dr. Means again examined plaintiff and concluded that while plaintiff was anesthetized for her partial hysterectomy he would perform

a minor operation on her left breast for purpose of checking on the lump or lumps. On 11 March 1969 while plaintiff was anesthetized for the corrective surgery aforesaid, Dr. Means performed a minor operation on plaintiff's left breast and removed a small lump. Upon careful examination of the removed tissue Dr. Means was suspicious of cancer and referred the tissue to Dr. Dudley for immediate pathological examination. Within a few minutes Dr. Dudley reported that the tissue was cancerous and Dr. Means proceeded to perform a radical mastectomy which procedure included a removal of plaintiff's entire left breast and also the muscles under it and lymph nodes under her left arm. Because of the additional breast surgery, the corrective surgery originally planned was not performed at that time but was delayed until several months later. Following removal of plaintiff's breast and other tissue further pathological tests were performed and it was discovered that a few cancer cells had developed in the lymph nodes. Plaintiff was approximately 46 years old at the time of the surgery.

Plaintiff contends that defendant was negligent in failing to diagnose the presence of cancer in her breast and in failing to exercise reasonable care in connection with his treatment of plaintiff; that he failed to refer plaintiff to a surgeon for appropriate surgery and as a consequence, plaintiff had to undergo a radical mastectomy.

Defendant contends that he was not guilty of any negligence or malpractice at any time; that any lumps in plaintiff's breasts at the time she was examined or treated by defendant consisted of a fibrotic condition, that at no time during examination or treatment by defendant did any lumps or nodules in plaintiff's breast present carcinomic (cancerous) characteristics; that if carcinoma did develop in plaintiff's breasts, it developed after plaintiff was last seen by defendant; and that once plaintiff developed carcinoma of the breast there was no alternative except to perform a radical mastectomy no matter when it was diagnosed.

At the conclusion of plaintiff's testimony, the court allowed defendant's motion for a directed verdict and from judgment dismissing the action, plaintiff appealed.

*White, Crumpler and Pfefferkorn by Joe P. McCollum, Jr., William G. Pfefferkorn, and James G. White for plaintiff appellant.*

*Hudson, Petree, Stockton, Stockton & Robinson by John M. Harrington, Ralph M. Stockton, Jr., and William F. Maready for defendant appellee.*

BRITT, Judge.

In *Hunt v. Bradshaw,* 242 N.C. 517, 88 S.E. 2d 762 (1955), cited in briefs for both parties, in an opinion written by Higgins, Justice, we find the following:

> "A physician or surgeon who undertakes to render professional services must meet these requirements: (1) He must possess the degree of professional learning, skill and ability which others similarly situated ordinarily possess; (2) he must exercise reasonable care and diligence in the application of his knowledge and skill to the patient's case; and (3) he must use his best judgment in the treatment and care of his patient. (Citing authority.) If the physician or surgeon lives up to the foregoing requirements he is not civilly liable for the consequences. If he fails in any one particular, and such failure is the proximate cause of injury and damage, he is liable."

In *Belk v. Schweizer,* 268 N.C. 50, 149 S.E. 2d 565 (1966), in an opinion by Parker, Chief Justice, we find the following:

> "A qualified physician or surgeon does not guarantee or insure the correctness of his diagnosis, and ordinarily he is not responsible for a mistake in diagnosis if he uses the requisite degree of skill and care. Generally stated, a qualified physician or surgeon is not liable for an honest error or mistake in judgment if he applies ordinary and reasonable skill and care, keeps within recognized and approved methods, and forms his judgment after a careful and proper examination or investigation. He is not charged with the duty of omniscience, and ordinarily is not an insurer. In order to afford a basis for an action for malpractice, the want of skill or care must be a proximate cause of the injury or death of the patient. 70 C.J.S., Physicians and Surgeons, p. 48, a, c, d, e."

[1]    We hold that the trial court properly allowed defendant's motion for a directed verdict. In the first place, we think that plaintiff failed to show negligence on the part of defendant. None of the testimony presented by plaintiff herself or by her witnesses indicates that defendant failed to possess the requirements set forth in *Hunt v. Bradshaw, supra,* quoted above. Her evidence indicates that defendant, taking into account plaintiff's condition, exercised reasonable care and his best judgment in her treatment. The testimony of Dr. Means and Dr. Amparo tended to show that many women have a fibrotic condition, that is, lumps in their breasts; that whether these lumps are treated or allowed to remain untreated is decided by the individual doctor based upon the patient's history as well as the size, texture and shape of the lumps. They also testified that it was not the general practice to remove all lumps found in women's breasts merely because they were there. There was further testimony that the fibrotic or cystic disease is not cancerous but that its presence makes the detection of cancer much more difficult because the symptoms of the former mask or hide those of the other; that no one can tell when or where a cancer forms or how long it has been there; that a cancer may remain small for a long time or it may grow rapidly. Dr. Dudley testified that the tissue he examined, which was removed from plaintiff's breast, contained a fibrotic condition as well as a cancerous one. There was no showing that the cancerous lump was present at the time defendant last examined plaintiff; neither was there testimony that the lump which plaintiff was aware of was the same lump that was determined to be cancerous. Dr. Means testified that the cancer which he found "was not near the surface, superficial area." He further testified that when he first examined plaintiff's breast he did not have any suspicions at that time about cancer; that he was surprised that the mass which he removed was found to be cancerous.

[2]    There is an additional reason why the trial court was correct in allowing defendant's motion for a directed verdict. In order for plaintiff to make out a *prima facie* case, it was necessary that she not only show negligence on the part of defendant, but that such negligence was the proximate cause of her injury —that the negligence shown had a causal relationship to the injury complained of. 6 Strong *N. C. Index* 2d, Negligence, Sec. 8, pp. 17-18. If the evidence failed to show a causal connection between the alleged negligence and the injury complained of, motion for directed verdict in favor of defendant was proper.

*Reason v. Singer Sewing Machine Company,* 259 N.C. 264, 130 S.E. 2d 397 (1963). Conceding, *arguendo,* that plaintiff showed negligence on the part of the defendant, we think she failed to show causal connection between the negligence and the injury complained of.

The testimony of all the doctors was to the effect that once cancer is found in a woman's breast, removal of the breast is the only proper treatment since failure to remove could cause death of the patient. Dr. Starling testified: " . . . I think the most generally accepted procedure throughout the country, in Winston-Salem and every place—is a radical mastectomy. . . . Where the lump is discovered to be cancerous while it is still small, say, the size of a marble, it would be the same procedure." Dr. Amparo testified: " . . . (E)ven when it is of microscopic size, or later, and at any other stage, . . . the standard accepted treatment for that cancer whenever it is diagnosed is removal of the breast." Dr. Dudley testified: " . . . (I)f cancer is there, the breast must be taken off, if it is as small as a pea or as large as a lemon, it still must be taken off right then. If there was some way to diagnose it even in the earliest stages, we would still remove the breast . . . It would be the customary procedure in this community to also remove the muscles, the underlying muscles, although there are some exceptions. Some surgeons like to spare the muscles, if they can. I would say probably 80 percent or more of the operations we get they take the muscles as well as the breast. It does not make a difference as to whether it is an early discovery or an enlarged tumor. . . . It is normal procedure, also, to remove the lymph nodes in the area under the armpit. That's standard procedure." Dr. Means testified: "I determined it was necessary at that time to proceed with the usual cancer operation, which involves a radical mastectomy and axillary section; removing the lymph nodes under the armpit, which is the usual operation for malignacy of the breast."

For reasons stated, the judgment of the superior court is

Affirmed.

Judges CAMPBELL and HEDRICK concur.