RICHARD D. TURNER, Administrator of the Estate of Jane L. Turner, Plaintiff v. DUKE UNIVERSITY, PRIVATE DIAGNOSTIC CLINIC, and ALLAN H. FRIEDMAN, M.D., Defendants

No. 8814SC191

(Filed 4 October 1988)

1. **Rules of Civil Procedure § 11— medical malpractice case—physician's name in medical records—no attempt to hide identity**

    The fact that the signature of the physician who examined plaintiff's wife on the afternoon before her death was contained in medical records to which plaintiff had access, that plaintiff was given the opportunity to discover the identity of that physician, and that the physician's name was made known to plaintiff in response to interrogatories precluded a conclusion that defendant actively or improperly sought to keep the physician's existence from plaintiff in contravention of N.C.G.S. § 1A-1, Rule 11.

2. **Rules of Civil Procedure § 26— deposition of physician after particular date—physician not expert witness—court order not violated**

    In deposing a particular physician after 17 June 1987, defendant in a medical malpractice case did not violate an order requiring identification and deposition of expert witnesses prior to that date, since the physician in question was not questioned about the standard of care, was not retained for the purpose of litigation, and therefore was not an expert witness; rather, he had personally treated plaintiff's wife, and his testimony was limited in scope to the facts regarding his diagnosis and treatment of her. N.C.G.S. § 1A-1, Rule 26(b)(4).

3. **Rules of Civil Procedure § 26— depositions not duplication of other expert testimony—no increased cost of litigation—sanctions not required**

    There was no merit to plaintiff's contention that sanctions should be imposed upon defendant for the taking of two depositions of physicians, since there was no evidence that testimony by one was duplicative of other expert testimony, that the depositions increased plaintiff's costs, or that the depositions were purposely scheduled to distract plaintiff from preparing for trial. N.C.G.S. § 1A-1, Rules 11(a) and 26(g).

4. **Physicians, Surgeons and Allied Professions § 20— patient not examined by physician—condition not diagnosed—failure to show causal connection between physician's actions and death**

    The trial court in a malpractice action did not err in directing a verdict in favor of defendant physician where the evidence tended to show that plaintiff's intestate, who suffered from cancer and was in overall poor health, experienced constipation the day before her death; she was given an enema which perforated her bowel; she continued to experience abdominal cramping but was not examined by defendant; plaintiff's evidence that an examination of his intestate might have made a difference was insufficient to show that defendant's negligence proximately caused her death; and plaintiff's medical expert's

assertion that defendant might have been the one doctor to detect her problem was mere speculation.

Judge PHILLIPS concurring in part and dissenting in part.

APPEAL by plaintiff from *Barnette (Henry V., Jr.)* and *Stephens (Donald W.), Judges.* Order entered 20 July 1987 and judgment entered 4 August 1987 in Superior Court, DURHAM County. Heard in the Court of Appeals 9 June 1988.

Plaintiff instituted this action on 25 July 1985 pursuant to G.S. 28A-18.1 alleging that defendants' negligence in the treatment and diagnosis of plaintiff's wife proximately caused her death on 27 August 1983. The matter came to trial on 27 July 1987. At the end of plaintiff's evidence, the trial court granted a directed verdict in favor of defendants Private Diagnostic Clinic and Dr. Friedman. The jury subsequently returned a verdict in favor of defendant Duke University (Duke).

On 17 July 1987, prior to the beginning of the trial, plaintiff filed a Motion for Sanctions against Duke pursuant to G.S. 1A-1, Rule 11(a), Rule 26(g) and Rule 37 alleging in part that Duke: (1) failed to comply with an order instructing Duke, in answering a set of interrogatories, to "provide this information [names and addresses of persons involved in the treatment of plaintiff's wife] as to specific individuals if requested at a later date by plaintiff's counsel"; (2) failed to comply with an order instructing Duke to identify before 17 June 1987 all expert witnesses that would be offered at trial; (3) failed to comply with an order instructing all parties to supplement outstanding interrogatories on or by 1 July 1987; and (4) noticed after 17 July 1987 depositions of two treating physicians (one located in Florida, one located in California), classified as experts, for an improper purpose and with the intent to harass plaintiff's counsel in contravention of Rule 11(a). After a hearing, plaintiff's motion for sanctions was denied. Plaintiff appeals both Judge Barnette's denial of his Motion for Sanctions and the trial court's granting of a directed verdict in favor of Dr. Friedman and Private Diagnostic Clinic.

*Jernigan & Maxfield, by Leonard T. Jernigan, Jr. and John A. Maxfield, for plaintiff-appellant.*

*Newsom, Graham, Hedrick, Bryson & Kennon, by E. C. Bryson, Jr. and Joel M. Craig, for defendants-appellees Private Diagnostic Clinic and Allan H. Friedman, M.D.*

*Yates, Fleishman, McLamb & Weyher, by Beth R. Fleishman and Barbara B. Weyher, for defendant-appellee Duke University.*

SMITH, Judge.

## I.

Plaintiff brings forth two assignments of error. Plaintiff first contends that Judge Barnette erred in denying his pre-trial motion to strike the notice of depositions of Dr. Rudolph Schereer in Florida and Dr. Robert Havard in California and in failing to impose mandatory sanctions under G.S. 1A-1, Rule 11 and Rule 26. Specifically, plaintiff contends: that Duke knew for months before trial of the existence of Dr. Havard, an alleged key witness, but waited until just prior to trial to notice Dr. Havard's deposition; that Dr. Schereer was an "expert" and allowing his deposition after 17 June 1987 violated the court order instructing Duke to identify all expert witnesses prior to 17 June 1987; that the depositions were a needless expense which unduly increased the cost of litigation; and that defendant purposely noticed the taking of these depositions seven days before trial to disrupt plaintiff's trial preparation.

Rule 11(a) states in pertinent part:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it . . . is not interposed for any improper purpose such as to harass or to cause unnecessary delay or needless increase in the cost of litigation . . . . If a pleading, motion, or other paper is signed in violation of this rule, the court . . . shall impose . . . an appropriate sanction.

Similarly, Rule 26(g) provides that when an attorney or party signs a discovery document, he certifies to the best of his

knowledge that it has not been served for an improper purpose and is not unreasonably burdensome or expensive. Violation of this rule subjects the attorney or party to sanctions.

G.S. 1A-1, Rule 26(g) was enacted in 1985 and the mandatory portion of G.S. 1A-1, Rule 11(a) was enacted in 1986. The effect of these provisions is to make available mandatory sanctions for violation of the rules. No North Carolina case has specifically addressed the issue of the standard of review which this court should utilize in reviewing sanction decisions by the trial court. The North Carolina Rules of Civil Procedure are for the most part verbatim recitations of the federal rules. *Sutton v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1970). Decisions under the federal rules are therefore relevant for "guidance and enlightenment [to] develop the philosophy of the new [North Carolina] rules." *Johnson v. Johnson*, 14 N.C. App. 40, 42, 187 S.E. 2d 420, 421 (1972). The court in *Westmoreland v. CBS, Inc.*, 770 F. 2d 1168 (D.C. Cir. 1985), states that the purpose of Rule 11(a) is to require " '[g]reater attention by the . . . courts to pleading and motion abuses . . . and to reduce the reluctance of courts to impose sanctions.' " *Id.* at 1173-74, *quoting* Federal Rules of Civil Procedure advisory committee note. In *Westmoreland*, plaintiff sought attorney fees and expenses for defendant's violation of Rule 11. The court stated:

> Under Rule 11, sanctions may be imposed if a reasonable inquiry discloses the pleading, motion, or paper is (1) not well grounded in fact, (2) not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, or (3) interposed for any improper purpose such as harassment or delay. In determining whether factual (1) or dilatory or bad faith (3) reasons exist which may give rise to invocation of Rule 11 sanctions, the district court is accorded wide discretion. For the district court has tasted the flavor of the litigation and is in the best position to make these kinds of determinations. . . . [O]nce the court finds that these factors exist, Rule 11 *requires* that sanctions . . . be imposed.

*Id.* at 1174-75 (emphasis in original). A reviewing court must consider whether the trial court based its decision on the relevant factors before it and whether the judgment was clearly erroneous. *Id. But see Thomas v. Capital Sec. Services, Inc.*, 836 F. 2d 866 (5th Cir. 1988).

**[1]** In plaintiff's Rule 11 and Rule 26 claims on appeal, he makes three assertions. He first asserts that Duke was aware of the identity of a key witness, Dr. Robert Havard (the physician who examined plaintiff's wife on the afternoon before her death), well before noticing his deposition on 7 July 1987, but unreasonably and in violation of a court order withheld deposing him or making his identity known until just prior to trial. We disagree.

Although claiming to have been in the dark about the identity of Dr. Havard, plaintiff had ample opportunity to discover his existence. Plaintiff had early access to medical records in which Dr. Havard's signature, albeit illegible, appears. The record shows that on 25 April 1986 plaintiff filed with defendant a set of interrogatories in which he requested the names and addresses of any person known to have treated plaintiff's wife. When defendant answered by stating that all witnesses were listed in the medical records, plaintiff filed a motion to compel. The subsequent court order stated: "[A]s to Interrogatory No. 13, defendants are ordered to provide the name, address and telephone number as to specific individuals if requested by plaintiff's counsel at a later date." While the wording in this order is ambiguous, we interpret it to mean that Duke is required to supply the information requested if it is asked about specific individual persons. Dr. Havard's signature was part of the medical records. Plaintiff had only to ask specifically about the identity of the signator and defendant would have been obliged to supply it. Plaintiff never made this request; he merely resubmitted the same general request months later. Further, Dr. Havard's name was listed as a nonexpert witness in Dr. Friedman's 25 June 1987 answer to a set of plaintiff's interrogatories. Thus, plaintiff was aware of Dr. Havard's name approximately one month before trial. The fact that Dr. Havard's signature was contained in medical records to which plaintiff had access, that plaintiff was given the opportunity to discover the identity of that signator, and that Dr. Havard's name was made known to plaintiff in response to interrogatories precludes a conclusion that defendant actively or improperly sought to keep Dr. Havard's existence from plaintiff in contravention of Rule 11(a).

**[2]** Plaintiff next asserts that Dr. Schereer (who treated plaintiff's wife for lung cancer prior to her coming to Duke) was an expert witness and that by failing to depose him on or before 17

June 1987, defendant violated an order requiring expert witnesses to be identified and deposed before 17 June 1987. We do not agree. The record reveals that the purpose of the deposition was to elicit the doctor's personal observations as to Mrs. Turner's medical condition. The focus of his deposition was his treatment of Mrs. Turner. While it is clear that by general definition all doctors may be considered experts in that they possess a specialized knowledge of medicine above that of the average layman, every doctor may not be considered an expert in his role as a witness in a legal controversy. G.S. 1A-1, Rule 26(b)(4) governs discovery through the use of experts. The advisory note to this rule contains the following observation:

> It should be noted that the subsection does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness.

Two Illinois cases are instructive on this point. In *Sheahan v. Dexter*, 136 Ill. App. 3d 241, 91 Ill. Dec. 120, 483 N.E. 2d 402 (1985), plaintiff sued defendant for malpractice. At trial defendant elicited testimony from treating physicians. On appeal, plaintiff assigned as error the admission of the physicians' testimony in that before trial they had not been disclosed as experts. In affirming the lower court, the appellate court stated:

> Both doctors first testified to . . . scans they performed on plaintiff. . . . In addition, both doctors were asked . . . questions relating to whether fine needle biopsies were performed at the . . . [h]ospital and surrounding communities. . . . The two doctors were not asked to testify to the standard of care applicable, but rather were questioned as to the availability of alternative tests or treatment. . . . No error occurred in permitting them to state their knowledge of such factual matters.

*Id.* at 250, 91 Ill. Dec. at ---, 483 N.E. 2d at 408. Similarly, in *Waterford v. Halloway*, 142 Ill. App. 3d 668, 96 Ill. Dec. 739, 491 N.E. 2d 1199 (1986), another malpractice case, the plaintiff appealed a jury verdict in defendant's favor and contended in part that defendant's failure to designate before trial two doctors as ex-

perts precluded their testimony. The lower court was affirmed for the reason that both of these doctors were treating physicians who were called to testify not about the standard of the plaintiff's care but about plaintiff's treatment and their choice of surgical procedures. The court further noted that neither doctor was called as an expert. In this case, Dr. Schereer was not questioned about the standard of care. His testimony was limited in scope to the facts regarding his diagnosis and treatment of plaintiff's wife.

Additionally, we note with approval the holding in *Krug v. United Disposal, Inc.,* 567 S.W. 2d 133 (Mo. 1978), in which the court concluded that the fact that defendant's manager was not listed as an expert did not preclude his testimony as to the value of a certain vehicle. The court stated:

> The normal use of the term [expert] applies to a witness 're-tained by a party in relation to litigation.' Here [the] witness was not retained by defendant to testify. He was defendant's maintenance manager, familiar with maintenance and the value of defendant's vehicles. He was defendant's alter ego and his knowledge of the extent of defendant's damages arose long before litigation.

*Id.* at 135-36. Duke did not retain Dr. Schereer for the purpose of litigation. He personally treated plaintiff's wife and his knowledge of her case arose before her death and before this litigation. For the foregoing reasons, we conclude that in deposing Dr. Schereer after 17 June 1987 Duke did not violate the order requiring identification and deposition of expert witnesses prior to that date.

[3] Plaintiff's last assertions concerning his Rule 11 and Rule 26 claim are that Dr. Schereer's deposition caused a needless increase in the cost of litigation because his testimony was duplicative of other expert testimony and that Dr. Schereer's and Dr. Havard's depositions were noticed in an attempt to thwart plaintiff's pre-trial preparation. The record is devoid of any evidence that these depositions either increased plaintiff's costs or were purposely scheduled to distract plaintiff from preparing for trial. The record does show, however, that during pre-trial discovery plaintiff raised the issue of the resectability of Mrs. Turner's cancerous tumor. Although another cancer or oncology expert was deposed and testified at trial about the viability of resectioning Mrs. Turner's tumor, Dr. Schereer was the surgeon who

operated on and treated her cancer. We believe that his personal perspective and impressions were relevant and his deposition and testimony were not needlessly duplicative. The record reveals that plaintiff decided not to expend his time or money to attend either deposition, that at the motion hearing he declined the court's suggestion that the deposition be conducted by telephone, and that he specifically refused to move for a continuance to further prepare for trial. Additionally, we note that during the motion hearing when asked by the judge whether plaintiff would object to the doctors' testimony at trial based on the fact that defendant had violated a discovery order in regard to expert testimony, plaintiff responded in part that "if they want to fly them in, I suppose I would have no objection to them. . . ." We can find no evidence that plaintiff was unduly prejudiced by the taking of these depositions or that defendants set out to deliberately interfere with plaintiff's trial preparation.

After examination of plaintiff's contentions and the facts in this case, we find nothing to show that the lower court order was clearly erroneous. We therefore hold that the court properly denied plaintiff's motion.

II.

[4] We next address plaintiff's second assignment of error that the trial court erred in directing a verdict in favor of Dr. Friedman and Private Diagnostic Clinic at the end of plaintiff's evidence. To survive a motion for a directed verdict in a malpractice case, plaintiff is required to put on evidence showing (1) standard of care, (2) breach of the standard, (3) proximate cause and (4) damages. *Bridges v. Shelby Women's Clinic, P.A.*, 72 N.C. App. 15, 323 S.E. 2d 372 (1984), *disc. rev. denied*, 313 N.C. 596, 330 S.E. 2d 605 (1985). The failure to present sufficient evidence of any of these four elements entitles defendant to a directed verdict. *Id.* In assessing whether a directed verdict is proper, plaintiff's evidence must be taken as true and all evidence must be viewed in the light most favorable to plaintiff, giving plaintiff every favorable inference. *Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E. 2d 678 (1977). Applying this standard to each element, we hold that plaintiff has failed to offer sufficient evidence that Dr. Friedman's negligence proximately caused Mrs. Turner's death.

Plaintiff's evidence in the light most favorable to him tends to show the following. Mrs. Turner was admitted to Duke Hos-

pital on 25 August 1983 for evaluation and treatment of residual pain she was experiencing which arose from a condition known as herpes zoster or "shingles." Dr. Friedman was her treating physician. Upon admittance, it was noted by a neurology resident, Dr. Woodworth, that Mrs. Turner had been experiencing constipation and had been taking medication to alleviate that complaint. Dr. Woodworth then conducted a digital rectal exam but found her bowel sounds normal and her rectum empty. During that evening, she took two Dulcolax tablets for constipation but with no effect. On the morning of 26 August 1983, while Mrs. Turner was still asleep, Dr. Friedman stopped by her hospital room but, after checking her medical chart, did not enter her room to examine her. Upon awakening and throughout the morning, Mrs. Turner complained of constipation and abdominal cramping. Around 11:00 a.m., Dr. Woodworth ordered that Mrs. Turner be given a saline enema to alleviate her constipation. If there were no results from the enema, he ordered that she be given a half bottle of magnesium citrate. The second half of the magnesium citrate was to be administered at around 2:00 p.m. if Mrs. Turner had not experienced any relief. Neither the enema nor the magnesium citrate produced any positive result. Mrs. Turner made numerous attempts to have a bowel movement and continued to complain of abdominal cramping. At approximately 2:00 p.m. she was moved to a room in a different wing of the hospital where patients with neurological complaints were concentrated. Mrs. Turner was also given the second half of the magnesium citrate. Around 3:30 p.m., Dr. Robert Havard, an oncologist called upon by Dr. Friedman to evaluate the condition of Mrs. Turner's cancer, visited Mrs. Turner and examined her. During his examination, she continued to make trips to the bathroom to alleviate her constipation but with no results. Dr. Havard noted on Mrs. Turner's chart that she was experiencing "extreme abdominal discomfort." Around 5:00 p.m., plaintiff, who had remained with his wife throughout the day, became increasingly concerned about her abdominal pain, rang for a nurse and requested a doctor to check her. Plaintiff was told that the doctors were making rounds and would attend his wife when they reached her room. At 6:00 p.m., the doctors, including Dr. Woodworth, stopped at Mrs. Turner's room but despite plaintiff's requests did not examine Mrs. Turner at that time. Sometime between 7:00 and 8:00 p.m., plaintiff saw Dr. Woodworth in the hall and asked him to check his wife. When Dr.

Woodworth examined Mrs. Turner, her bowel was distended, she was breathing heavily, and her skin was clammy. He immediately left to order a blood work-up and x-rays and to contact the general surgeon on duty. Upon his return to Mrs. Turner's room, her blood pressure had dropped, she was unresponsive and in shock. Around 12 midnight, Mrs. Turner underwent surgery and it was discovered that her bowel was perforated and that the damage was irreparable. Mrs. Turner died on 27 August 1983 at 4:10 a.m. The autopsy report listed the cause of death as acute peritonitis caused from the bowel perforation. The medical examiner determined that the perforation was caused by the enema administered on 26 August 1983. During the course of the events on 26 and 27 August, Dr. Friedman never actually visited Mrs. Turner. Dr. Friedman did testify that on the afternoon of 26 August he attempted to visit Mrs. Turner but was informed that she had been moved to another room. He also testified that after reviewing her chart and talking to Dr. Havard, who had examined Mrs. Turner, he determined that there was nothing unusual on her chart requiring his attention.

It was plaintiff's theory at trial that Dr. Friedman, as attending physician, violated a standard of care by failing to attend, diagnose and treat Mrs. Turner and that this failure precluded discovery of her worsening condition which led to her death. Plaintiff contends that these failures proximately caused her death. Plaintiff's expert witness, Dr. William Pace, testified that had Dr. Friedman examined Mrs. Turner he might have been the only doctor to correctly diagnose her condition and that his failure to conduct an examination violated the standard of care. He further testified that it was his opinion that Dr. Friedman's violation of the standard of care proximately caused Mrs. Turner's death. However, on cross-examination, the following exchange took place:

Q. All right. Now, is it not true . . . Let me ask you this. If Dr. Friedman had seen Mrs. Turner at 3:00 in the afternoon, some thirty minutes before Dr. Havard, the internist, had seen her? It would not have made any difference the diagnosis, of her condition, would it?

A. We've got to do a hypothetical assumption that Dr. Havard did see her at 3:30 and that Dr. Friedman did try to

see her at 3:00 and somewhere in that half an hour she appeared, got into bed and was available for examination. And it wouldn't have made a difference.

Q. But I want you to assume . . .

A. Very difficult. But all right. I'll assume. It probably wouldn't have made much difference.

and

Q. My question was, if Dr. Havard, the internist who specialized in internal medicine, how [sic] could have hung out his shingle, didn't pick it up, less chance of Dr. Friedman would have picked it up, is that not true?

A. Probably.

Additionally, although Dr. Pace did testify that a perforation of the bowel was reversible, it was Dr. Friedman's testimony that given Mrs. Turner's overall poor health, he "may or may not" have been able to save her life if he had discovered her condition on the afternoon of 26 August.

When a trial court's determination regarding a directed verdict is a close one, the better practice is to allow the case to go to the jury. *Manganello, supra.* However, if the evidence fails to establish a causal connection between the alleged negligence and the injury, a directed verdict in favor of defendant is proper. *Weatherman v. White,* 10 N.C. App. 480, 179 S.E. 2d 134 (1971).

The burden was therefore upon the plaintiff to show that defendant's alleged negligence proximately caused his intestate's death, and the proof should have been of such a character as reasonably to warrant the inference of the fact required to be established, and not merely sufficient to raise a surmise or conjecture as to the existence of the essential fact . . . . '[E]vidence which merely shows it possible for the fact in issue to be as alleged, or which raises a mere conjecture that it was so, is an insufficient foundation for a verdict and should not be left to the jury.' (citation omitted) . . . The plaintiff must do more than show the possible liability of the defendant for the injury. He must go further and offer at least some evidence which reasonably tends to prove every fact essential to his success.

*Byrd v. Express Co.,* 139 N.C. 273, 275-76, 51 S.E. 851, 852 (1905). Plaintiff's evidence, even when viewed in the light most favorable to him, merely shows that an examination of Mrs. Turner on the afternoon of 26 August might have made a difference but "probably not." Dr. Pace's assertion that Dr. Friedman might have been the one doctor to detect her problem is mere speculation. "Proof of proximate cause in a malpractice case requires more than a showing that a different treatment would have improved the patient's chances." *White v. Hunsinger,* 88 N.C. App. 382, 386, 363 S.E. 2d 203, 206 (1988). Therefore, we hold that the trial court did not err in granting defendant's motion for a directed verdict.

Affirmed.

Judge ORR concurs.

Judge PHILLIPS concurs in part and dissents in part.

Judge PHILLIPS concurring in part and dissenting in part.

Though I do not believe that the trial judge's failure to impose sanctions against Duke University and strike the last minute depositions of Drs. Scheerer and Havard constituted reversible error, the University's patent evasiveness in regard to those witnesses is viewed by the majority with too tolerant an eye in my opinion. In this State discovery is not just a search for information relating to a case with it being immaterial where the information is obtained; litigants have the right to ascertain without quibble or evasion what their adversaries know about the facts in litigation, and that the inquirer may already know the same thing or can find out elsewhere is irrelevant. Thus, plaintiff had the right to have the University state under oath the names and addresses of the persons that it knew had treated the decedent, and its purported answer, "See medical records," was no answer at all and can only be characterized as evasive; and the evasiveness was rendered frivolous by the fact that the hospital's record is only a few pages long and most of the signatures are illegible.

On the other hand, the majority's view of plaintiff's evidence is too narrow. Dr. Pace's testimony that Dr. Friedman's failure to

examine his patient during the afternoon when her condition was obviously deteriorating violated the standard of care and proximately caused her death raised a question of fact for the jury; a question that was not eliminated by the contradictory testimony referred to in the opinion, since weighing contradictions in evidence is the jury's function, not ours.

Furthermore, plaintiff's evidence also raised a question of fact as to whether Mrs. Turner's death was proximately caused by Dr. Friedman's negligent failure to diagnose and treat her dangerous state of constipation, as alleged in Paragraph 47(b) of the complaint. Though Dr. Friedman admitted that he was aware that she had been taking medicines that caused constipation and said he would have been surprised if she had not been constipated, the evidence indicates that neither he nor any of his many assistants did anything whatever to ascertain the extent of her constipation before prescribing the enemas which literally blew out the wall of her colon. For the record that defendants made of the inquiries and examinations that were made of this patient contains no indication whatever that she or anyone else was asked when her last bowel movement was, or that any physician or anyone else felt her abdomen which then contained, as surgery soon revealed, "bucketsful of stool" that had been accumulating in her colon for a long time. This evidence, in my opinion, along with evidence that less than two days before her death decedent walked into the hospital seeking treatment and during the time she was there her husband tried on several occasions to get somebody to attend her for the intense abdominal pain she was suffering, is sufficient, even in the absence of expert testimony, to permit a jury to infer that the medical care Mrs. Turner received did not meet even the most rudimentary standards, much less those adhered to by nationally ranked medical centers, and that her death resulted therefrom. But there was expert testimony on this issue. In substance, Dr. Pace testified that: The applicable standard required a physician treating a patient known to be constipated to at least ask the patient when the last bowel movement was and to determine by carefully feeling the abdomen whether the colon was full of stool before prescribing the enemas; that such an examination would probably have disclosed Mrs. Turner's condition since she was a frail woman and her abdomen then con-

tained an enormous quantity of stool; and that neither of these steps was taken was a deviation from that standard.

Thus, my vote is not to disturb the judgment in favor of Duke University, but to grant the plaintiff a new trial against the other defendants.