IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-952

Filed: 1 March 2016

Cumberland County, No. 14 CVS 7633

ESTATE OF TABATHA LEE BALDWIN, MATTIE ROLLINS, Administrator,
Plaintiff,

v.

RHA HEALTH SERVICES, INC., RHA/NORTH CAROLINA MR, INC., DBA
SOUTHERN AVENUE HOME, Defendant.

Appeal by plaintiff from order entered 30 April 2015 by Judge W. Russell Duke,

Jr., in Cumberland County Superior Court. Heard in the Court of Appeals 10

February 2016.

*Gregory B. Thompson for plaintiff-appellant.*

*Batten Lee PLLC, by Michael C. Allen and Jonathan H. Dunlap, for defendant-
appellee.*

TYSON, Judge.

Mattie Rollins ("Plaintiff"), administrator of the estate of Tabatha Baldwin,

appeals from order granting the motion to dismiss of RHA Health Services, Inc.

("Defendant"), and dismissing Plaintiff's complaint with prejudice. We affirm.

I. Factual Background

In October 2012, Tabatha Baldwin ("Ms. Baldwin") was a resident of Southern

Avenue Home, a long-term residential facility for developmentally disabled persons,

located in Fayetteville, North Carolina and operated by Defendant. Ms. Baldwin was profoundly mentally retarded and unable to communicate verbally.

At approximately 11:51 a.m. on 7 October 2012, the staff at Southern Avenue Home contacted an on-call nurse to report Ms. Baldwin was vomiting. The on-call nurse instructed the staff to monitor Ms. Baldwin. A follow-up telephone call was made by the nurse at 12:27 p.m. The staff reported Ms. Baldwin had ceased vomiting and there were no other concerns at that time. The on-call nurse requested that the staff continue monitoring Ms. Baldwin.

The staff contacted the on-call nurse again around 1:28 p.m., and reported Ms. Baldwin had "vomited liquid but not as much as earlier." The staff was instructed to start Ms. Baldwin on a clear liquids diet for twenty-four hours. The staff provided the on-call nurse with an update on Ms. Baldwin's status later that afternoon, and reported she was sleeping.

The on-call nurse received another telephone call from the staff at 7:38 p.m., in which the staff reported Ms. Baldwin had a seizure episode "that lasted approximate[ly] one minute." The staff reported Ms. Baldwin had "recovered from the seizure episode with no problems and . . . was 'okay.'"

At 9:18 p.m., the staff informed the on-call nurse that Ms. Baldwin had experienced a "TA (Urination)[,]" she was "a little heavy (almost like dead weight)[,]" and they were using a wheelchair to transport her. The staff also reported Ms.

Baldwin "did not eat dinner, but they [were] encouraging her to drink." The on-call nurse recommended that the staff continue monitoring Ms. Baldwin.

Defendant's staff reported the day's events concerning Ms. Baldwin to a certified physician's assistant at 10:35 p.m. The physician's assistant was comfortable with the home staff continuing to monitor Ms. Baldwin throughout the night, but advised the staff to "follow up with the doctor in the morning" if Ms. Baldwin remained stable. The physician's assistant also advised the staff to have Ms. Baldwin taken to the emergency department if her condition worsened.

Approximately one minute later, at 10:36 p.m., the home staff contacted the on-call nurse to report Ms. Baldwin was "leaning over vomiting and was trying to clear her throat." Defendant's staff also reported a noticeable change in Ms. Baldwin's breathing and asked the on-call nurse to listen over the telephone. The on-call nurse instructed the home staff to "keep [Ms. Baldwin] upright to prevent choking." The on-call nurse also consulted the physician's assistant, and provided an update on Ms. Baldwin's worsening condition. Both health care providers decided to send Ms. Baldwin to the emergency department for further evaluation and treatment.

The on-call nurse contacted Defendant's staff and directed them to send Ms. Baldwin to the emergency department. Emergency medical services ("EMS") transported Ms. Baldwin to Cape Fear Valley Medical Center Emergency Department at approximately 11:19 p.m. The EMS report noted Ms. Baldwin was

"unresponsive with chief complaint of 'Code Altered Mental Status'" and "had no gag reflux noted."

Upon her arrival at Cape Fear Valley Medical Center, Ms. Baldwin was intubated for airway protection. The emergency department report noted she was comatose, and her eyes were "fixed and dilated[.]" Ms. Baldwin was admitted into the intensive care unit in the early morning hours of 8 October 2012. On 10 October, Ms. Baldwin's condition was "compatible with brain death." Ms. Baldwin died later that day, with the immediate cause of death reported as pneumonia, seizure disorder, and anoxic encephalopathy.

Plaintiff filed a complaint on 10 October 2014. He alleged claims of ordinary negligence and negligence *per se* against Defendant related to Ms. Baldwin's treatment while a resident at Southern Avenue Home on 7 October 2012. Defendant responded by filing an answer and motion to dismiss on 25 November 2014. Defendant moved to dismiss Plaintiff's claim of negligence *per se* pursuant to North Carolina Rules of Civil Procedure, Rule 12(b)(6), and alleged Plaintiff had "failed to specify any specific and written law the Defendants allegedly violated which would give rise to a negligence *per se* claim."

Defendant also moved to dismiss Plaintiff's entire complaint for failure to comply with the specific pleading requirements of North Carolina Rules of Civil Procedure, Rule 9(j). Defendant alleged: "Plaintiff's Complaint sounds in medical

malpractice, yet fails to assert that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a qualifying expert witness prior to filing this lawsuit."

Defendant's motion to dismiss was heard on 6 April 2015. The trial court entered a written order granting Defendant's motion to dismiss on 30 April 2015, wherein it made the following findings of fact and conclusions of law:

> 3. Facts alleged in this Complaint sound in Medical Malpractice and accordingly this Complaint requires compliance with Rule 9(j) of the North Carolina Rules of Civil Procedure. Specifically, this Complaint contains allegations related to the professional services of one or more "health care providers" as defined by North Carolina law.

> 4. Plaintiff failed to comply with the substantive and pleading requirements of Rule 9(j) of the North Carolina Rules of Civil Procedure.

> 5. Plaintiff's Complaint fails to assert facts sufficient to support a claim of *negligence per se*.

Plaintiff gave timely notice of appeal to this Court.

## II. Issues

Plaintiff argues the trial court erred by granting Defendant's motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 9(j). He asserts his complaint was improperly treated as a medical malpractice action. Plaintiff contends: (1) Defendant does not fall within the statutory definition of "health care provider;" and (2) his claim of ordinary negligence does not require an expert witness certification.

## III. Standard of Review

"A plaintiff's compliance with [N.C. Gen. Stat. § 1A-1,] Rule 9(j) . . . presents a question of law to be decided by a court, not a jury. A question of law is reviewable by this Court *de novo*." *Carlton v. Melvin*, 205 N.C. App. 690, 692, 697 S.E.2d 360, 362 (citation and quotation marks omitted), *disc. review denied*, 364 N.C. 605, 703 S.E.2d 441 (2010). "When ruling on a motion to dismiss pursuant to Rule 9(j), a court must consider the facts relevant to Rule 9(j) and apply the law to them." *Estate of Wooden ex rel. Jones v. Hillcrest Convalescent Ctr., Inc.*, 222 N.C. App. 396, 403, 731 S.E.2d 500, 506 (2012) (citation and internal quotation marks omitted).

> On a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, the standard of review is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory. The complaint must be liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief.

*Holleman v. Aiken*, 193 N.C. App. 484, 491, 668 S.E.2d 579, 584-85 (2008) (citation and quotation marks omitted).

"Dismissal is warranted (1) when the face of the complaint reveals that no law supports plaintiffs' claim; (2) when the face of the complaint reveals that some fact essential to plaintiffs' claim is missing; or (3) when some fact disclosed in the complaint defeats plaintiffs' claim." *Walker v. Sloan*, 137 N.C. App. 387, 392, 529 S.E.2d 236, 241 (2000) (citation and internal quotation marks omitted).

"[T]he trial court regards all factual allegations of the complaint as true. Legal conclusions, however, are not entitled to a presumption of truth." *Id.* (citations omitted). This Court "conducts a *de novo* review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." *Podrebarac v. Horack, Talley, Pharr, & Lowndes, P.A.*, 231 N.C. App. 70, 74, 752 S.E.2d 661, 663-64 (2013) (citation omitted).

IV. Analysis

A. Compliance with Rule 9(j)

Plaintiff contends the trial court erroneously dismissed his complaint pursuant to N.C. Gen. Stat. § 1A-1, Rule 9(j). Plaintiff argues Rule 9(j) certification was not required because Defendant is not a "health care provider," as defined by N.C. Gen. Stat. § 90-21.11.

Rule 9(j) of the North Carolina Rules of Civil Procedure sets forth the procedures with which a plaintiff must comply when filing a medical malpractice action. Rule 9(j) provides:

> Any complaint alleging medical malpractice by a health care provider pursuant to [N.C. Gen. Stat. §] 90-21.11(2)a. in failing to comply with the applicable standard of care under [N.C. Gen. Stat. §] 90-21.12 *shall be dismissed unless*:
>
> > (1) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been

reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care;

(2)   The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person that the complainant will seek to have qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care, and the motion is filed with the complaint; or

(3)   The pleading alleges facts establishing negligence under the existing common-law doctrine of res ipsa loquitur.

N.C. Gen. Stat. § 1A-1, Rule 9(j) (2015) (emphasis supplied).

"Medical malpractice action" is statutorily defined, in pertinent part, as "[a] civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider." N.C. Gen. Stat. § 90-21.11(2)(a) (2015).

N.C. Gen. Stat. § 90-21.11(1) defines "health care provider" as:

a. A person who pursuant to the provisions of Chapter 90 of the General Statutes is licensed, or is otherwise registered or certified to engage in the practice of or otherwise performs duties associated with any of the following: medicine, surgery, dentistry, pharmacy, optometry, midwifery, osteopathy, podiatry, chiropractic, radiology, nursing, physiotherapy, pathology, anesthesiology, anesthesia, laboratory analysis, rendering

assistance to a physician, dental hygiene, psychiatry, or psychology.

b. A hospital, a nursing home licensed under Chapter 131E of the General Statues, or an adult care home licensed under Chapter 131D of the General Statues.

c. Any other person who is legally responsible for the negligence of a person described by sub-subdivision a. of this subdivision, a hospital, a nursing home licensed under Chapter 131E of the General Statutes, or an adult care home licensed under Chapter 131D of the General Statutes.

d. *Any other person acting at the direction or under the supervision of* a person described by sub-subdivision a. of this subdivision, a hospital, a nursing home licensed under Chapter 131E of the General Statutes, or an adult care home licensed under Chapter 131D of the General Statutes.

N.C. Gen. Stat. § 90-21.11(1)(a)-(d) (2015) (emphasis supplied).

Plaintiff argues Defendant does not fall under one of the enumerated definitions of "health care provider" set forth in N.C. Gen. Stat. § 90-21.11(1), and he was not required to obtain Rule 9(j) certification because his complaint is not a medical malpractice action. We disagree.

"In determining whether or not Rule 9(j) certification is required, the North Carolina Supreme Court has held that pleadings have a binding effect as to the underlying theory of plaintiff's negligence claim." *Sturgill v. Ashe Mem'l Hosp., Inc.*, 186 N.C. App. 624, 628, 652 S.E.2d 302, 305 (2007) (citations and internal quotation marks omitted), *disc. review denied*, 362 N.C. 180, 658 S.E.2d 662 (2008).

The crux of Plaintiff's argument relies on the statute's specific inclusion of facilities "licensed under Chapter 131[] of the General Statutes" in its definition of "health care provider." N.C. Gen. Stat. § 90-21.11(1)(b), (c). Plaintiff contends Defendant is not a statutorily defined "health care provider," because Defendant is licensed pursuant to Chapter 122C of our General Statutes. Plaintiff's argument misconstrues the role Defendant's staff played in the treatment of Ms. Baldwin, in light of the definitions set forth in N.C. Gen. Stat. § 90-21.11(1).

Here, the factual allegations in Plaintiff's complaint outline how Defendant's staff coordinated with both the on-call nurse and a physician's assistant to address Ms. Baldwin's ongoing health problems throughout the day and evening of 7 October 2012. Plaintiff's complaint clearly alleges Defendant's staff was, at all times relevant to this action, seeking advice and treatment options, and taking directives from the on-call nurse and a certified physician's assistant with regard to Ms. Baldwin's care, such as: (1) dietary changes; (2) positioning Ms. Baldwin to avoid asphyxiation; (3) general patient monitoring; and (4) when to increase Ms. Baldwin's level of care to a hospital setting.

The factual allegations in Plaintiff's complaint unmistakably show Defendant and its staff were "acting at the direction or under the supervision" of persons "described by sub-subdivision a. of this subdivision" — namely, the on-call nurse and

a certified physician's assistant — and are included within the statutory definition of "health care providers" under N.C. Gen. Stat. § 90-21.11(1)(d).

The trial court correctly determined Plaintiff's complaint "sound[s] in Medical Malpractice and . . . requires compliance with Rule 9(j) of the North Carolina Rules of Civil Procedure" because Plaintiff's "[c]omplaint contains allegations related to the professional services of one or more 'health care providers' as defined by North Carolina law." The trial court properly dismissed Plaintiff's complaint for "fail[ure] to comply with the substantive and pleading requirements of Rule 9(j)[.]" This argument is overruled.

### B. Ordinary Negligence

Plaintiff argues the trial court erred by dismissing his complaint pursuant to Rule 9(j) and Rule 12(b)(6) based upon a failure to state a claim for ordinary negligence. Plaintiff contends his complaint alleges a claim for ordinary negligence, rather than medical malpractice, and did not require an expert witness certification pursuant to Rule 9(j).

"[N]egligence actions against health care providers may be based upon breaches of the ordinary duty of reasonable care where the alleged breach does not involve rendering or failing to render professional services requiring special skills." *Duke Univ. v. St. Paul Fire and Marine Ins. Co.*, 96 N.C. App. 635, 640-41, 386 S.E.2d 762, 766, *disc. review denied*, 326 N.C. 595, 393 S.E.2d 876 (1990). This Court has

defined "professional services" to mean "an act or service arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual." *Sturgill*, 186 N.C. App. at 628, 652 S.E.2d at 305 (citations and internal quotation marks omitted) (holding the decision to apply restraints is a "professional service" because it "is a medical decision requiring clinical judgment and intellectual skill").

Plaintiff's complaint alleges Defendant "breached the duty to provide timely and prompt access to medical care, and to properly train its non-medical staff." This argument is unsupported by, and at times in direct contradiction with, the factual allegations Plaintiff asserts in his complaint. Furthermore, Plaintiff's artful attempt to frame his claims against Defendant as "untimely and delayed access to medical care" would not, *ipso facto*, remove this action from within the purview of medical malpractice. *See Katy v. Capriola*, 226 N.C. App. 470, 473, 742 S.E.2d 247, 250 (2013) (addressing claim that failure to timely diagnose and treat congestive heart failure resulted in delayed access to the appropriate medical care as medical malpractice action); *Tripp v. Pate*, 49 N.C. App. 329, 337, 271 S.E.2d 407, 412 (1980) (addressing claim that failure to timely diagnose and treat post-surgical infection resulted in delayed access to appropriate medical care as medical malpractice action); *Weatherman v. White*, 10 N.C. App. 480, 481, 179 S.E.2d 134, 135 (1971) (addressing

claim that failure to timely diagnose and treat cancer resulted in delayed access to medical care as medical malpractice action).

Plaintiff's complaint details how Defendant's staff regularly consulted with, and took instruction from, the on-call nurse and physician's assistant numerous times over an eleven-hour period. The home staff received several directives from the on-call nurse, and undertook medical interventions in the treatment of Ms. Baldwin. Each of the factual allegations asserted in Plaintiff's complaint describes some kind of health care-related service, which was provided to Ms. Baldwin under the direction of a "health care provider." N.C. Gen. Stat. § 90-21.11(1).

Additionally, Plaintiff's complaint fails to allege what, if any, delay occurred in Ms. Baldwin's medical treatment. *See Sturgill*, 186 N.C. App. at 629, 652 S.E.2d at 306 ("Plaintiff does not allege that defendant had any duty to check on decedent sooner than within an hour and a half, and makes no allegation as to how failing to check on plaintiff during that hour and a half caused plaintiff's injuries.").

Plaintiff's argument that Defendant breached its duty to provide Ms. Baldwin with timely and prompt access to medical care is utterly unsupported by the factual allegations in his complaint. Plaintiff's complaint also fails to assert any factual allegations whatsoever, which, taken as true, would tend to support his position on appeal that Defendant did not properly train its staff.

As discussed *supra*, Plaintiff's allegations show Defendant's staff was providing health care services under the direction and supervision of the on-call nurse and a certified physician's assistant, both of whom are statutorily defined as "health care providers." These medical decisions constitute the rendering of "professional services requiring special skill." *Duke Univ.*, 96 N.C. App. at 640-41, 386 S.E.2d at 766. The trial court properly determined Plaintiff's complaint "sounds in medical malpractice" and required Rule 9(j) certification. The trial court correctly dismissed Plaintiff's complaint for failure to state a claim for ordinary negligence, and failure to comply with Rule 9(j). Plaintiff's argument is overruled.

## V. Conclusion

Defendant falls within the statutory definition of a "health care provider," and Plaintiff failed to state a viable claim for ordinary negligence. Plaintiff's complaint essentially alleged a medical malpractice action, and Rule 9(j) certification was required. Plaintiff failed to certify his complaint pursuant to Rule 9(j). The trial court's order dismissing Plaintiff's complaint for failure to state a claim and failure to comply with Rule 9(j) is affirmed.

AFFIRMED.

Judges CALABRIA and DAVIS concur.