WILLIAM O. OVERCASH, Executor of the Estate of PAULINE RILEY OVER-
CASH, Deceased v. BLUE CROSS AND BLUE SHIELD OF NORTH
CAROLINA

No. 8819SC1047

(Filed 18 July 1989)

1. **Courts § 20.3— ERISA—claim for benefits due—jurisdiction in state court**

    The state trial court properly exercised jurisdiction over plaintiff's claim for breach of an insurance contract where plaintiff was seeking benefits under a health insurance plan maintained by plaintiff to provide insurance for employees of businesses he owned. The plan is subject to ERISA, the Employee Retirement Insurance Security Act, which vests exclusive jurisdiction in the federal courts with an exception including claims for benefits due. 29 U.S.C. 1132(a)(1)(B).

2. **Courts § 20.3— ERISA—claim for benefits due—de novo review**

    In an action in which plaintiff was claiming benefits under a health insurance plan within the scope of ERISA, defendant insurer's denial of benefits was subject to de novo review because a policy provision that benefits are payable "for medically necessary reasonable and customary charges as determined by [defendant]" did not clearly vest defendant with discretion to determine eligibility for benefits. The denial of benefits under ERISA is subject to de novo review unless the benefit plan gives the administrator discretionary authority to determine eligibility for the benefits or to construe the plan's terms.

3. **Courts § 20.3— ERISA—claim for benefits due—plaintiff not entitled to summary judgment**

    Plaintiff was not entitled to summary judgment on a claim for benefits due under a health insurance policy on the grounds that defendant's denial of benefits was based upon an allegedly erroneous interpretation of the contract where defendant's interpretation was supported by the plain meaning of the contract provisions.

4. **Courts § 20.3— health insurance—benefits—necessity for services—genuine issue of fact**

    There was a genuine issue of material fact which precluded summary judgment in an action to collect benefits under

a health insurance policy where private duty nursing [PDN] was required to be medically necessary within the meaning of the contract and there was a clear difference of opinion between plaintiff's expert and defendant's experts as to the necessity for the services in question.

5. **Courts § 20.3; Evidence § 34— ERISA—answer to interrogatory—necessity of treatment—not an admission**

In an action to collect health insurance benefits under a policy which covered private duty nursing [PDN] only if it was medically necessary, defendant's answer to an interrogatory that the services were necessary after plaintiff's decedent was hospitalized was not an admission that PDN was necessary earlier. Although many of the services rendered in the hospital were the same as those rendered earlier, two of the services rendered in the hospital were the type of invasive procedures which ordinarily require skilled care and one of defendant's consultants testified that decedent's condition had significantly deteriorated at that time.

6. **Courts § 20.3— ERISA—action to collect benefits—jury trial**

Plaintiff was entitled to a jury trial in an action to collect benefits under a health insurance plan despite the federal view that ERISA is equitable in nature and no jury trial is available. State rules governing jury trials generally control actions under federal law brought in state courts, although federal law must control where the right to a jury trial is a substantial part of the rights accorded by federal statute. The right to a jury trial under the law of North Carolina does not conflict with any of the substantive provisions of ERISA and, even if the federal courts' characterization of the action as equitable is accepted, the N.C. Supreme Court has held that issues of fact must be tried by a jury regardless of the equitable nature of the action. Art. I, § 25 of the North Carolina Constitution.

7. **Courts § 20.3; Attorneys at Law § 7— ERISA—attorney's fees—test for awarding**

The five-factor test for awarding attorney's fees in ERISA actions, which is almost unanimously accepted by the federal courts, is adopted for ERISA actions brought in the courts of this state. Both the decision to award fees and the amount of the award are matters within the trial court's discretion

and, if supported by proper findings, an award will not be disturbed absent an abuse of discretion.

8. **Attorneys at Law § 7.7; Rules of Civil Procedure § 11— ERISA — Rule 11 sanctions — vacated**

An award of attorney's fees to plaintiff in an ERISA action as a sanction under N.C.G.S. § 1A-1, Rule 11 was vacated and remanded for reconsideration where the fee was awarded for expenses in defending defendant's post-trial motion for attorney's fees under ERISA and Rule 11. Defendant had appealed from the earlier denial of its claim for attorney's fees under ERISA, its post-trial motion was based upon the ERISA action, and any award of attorney's fees would be governed by 29 U.S.C. 1132(g). Since the substantive basis of defendant's motion had been adjudicated in the earlier order, defendant's appeal therefrom divested the trial court of its jurisdiction to entertain the post-trial motion; nevertheless, defendant's motion did not warrant sanctions under Rule 11 because defendant's contention that plaintiff's claims were baseless was not without merit.

APPEAL by defendant from *Collier (Robert A., Jr.), Judge, Davis (James C.), Judge,* and *Rousseau (Julius A., Jr.), Judge.* Judgment entered 19 April 1988 and orders entered 24 May 1988 and 15 August 1988 in Superior Court, CABARRUS County. Heard in the Court of Appeals 14 April 1989.

*Faison & Brown, by Charles Gordon Brown and M. LeAnn Nease, for plaintiff-appellee.*

*Weinstein & Sturges, P.A., by William H. Sturges and L. Holms Eleazer, Jr., for defendant-appellant.*

PARKER, Judge.

I.

This action arises out of an alleged breach of an insurance contract. Plaintiff's decedent was a beneficiary of a group medical insurance contract issued by defendant. Decedent suffered from systemic amyloidosis, a progressive, chronic disease that affects several internal organs. Decedent's condition began to deteriorate in the spring of 1986. At first, her family was able to care for her at home with weekly visits from a nurse. On 4 August 1986,

OVERCASH v. BLUE CROSS AND BLUE SHIELD

[94 N.C. App. 602 (1989)]

decedent was hospitalized on account of her increased weakness and inability to eat. Decedent was discharged from the hospital on 15 August 1986. At that time, decedent's physician felt that her condition had deteriorated to the point where she required twenty-four hour nursing care. After consulting with the physician, decedent's family decided to obtain home nursing care for decedent.

Decedent remained under twenty-four hour home nursing care until 9 January 1987 when she was again hospitalized. She was discharged on 15 January 1987 and resumed treatment at home. She died on 12 March 1987.

Defendant provided coverage for nursing services rendered prior to the August 1986 hospitalization and subsequent to the January 1987 hospitalization. Defendant denied coverage, however, for home nursing services rendered from 15 August 1986 to 9 January 1987. Plaintiff filed a complaint in which he stated causes of action based on breach of contract, unfair and deceptive trade practices, and violations of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.* Plaintiff sought compensatory and punitive damages, treble damages pursuant to G.S. 75-16, and attorney's fees. Defendant filed an answer, asserted a counterclaim for attorney's fees under ERISA, and moved to strike plaintiff's request for a jury trial as to the causes of action arising under ERISA.

Both parties filed motions for partial summary judgment. On 19 April 1988, Judge Robert A. Collier, Jr. entered an order finding that the action was governed by ERISA, dismissing plaintiff's claims based upon State law, granting summary judgment for plaintiff on his claim under ERISA for payment of benefits, denying defendant's motion to strike plaintiff's demand for jury trial, and reserving for trial plaintiff's remaining claims under ERISA for extra-contractual and punitive damages. The matter came on for hearing before Judge James C. Davis on 24 May 1988. Judge Davis determined that plaintiff was entitled to $37,757.08 in attorney's fees and costs and so ordered in open court whereupon plaintiff gave notice that he was voluntarily dismissing all remaining claims. On 1 June 1988, defendant filed both a notice of appeal from the 24 May order and a motion for attorney's fees pursuant to ERISA and Rule 11 of the N.C. Rules of Civil Procedure. In response, plaintiff filed a motion for sanctions pursuant to Rule 11. On 15 August 1988, Judge Julius A. Rousseau, Jr. entered an order deny-

ing defendant's motion and awarding plaintiff $500.00 under Rule 11 for the expense of defending against defendant's motion.

Defendant appeals from the trial court's entry of summary judgment for plaintiff in the amount of $40,419.80, the court's award of attorney's fees and costs to plaintiff in the amount of $37,757.08, and the court's award of $500.00 to plaintiff as sanctions under Rule 11. Defendant contends that each of these actions was error and further asserts that should this Court reverse plaintiff's summary judgment, plaintiff is not entitled to jury trial on his claim for benefits. Defendant also contends the court erred in denying defendant's motion for attorney's fees pursuant to ERISA and Rule 11.

II.

[1]  Before determining the merits of defendant's appeal, we must clarify the law governing plaintiff's claims. The trial court found that this action was governed by ERISA rather than State law. Plaintiff filed a notice of appeal which specifically addressed this point but abandoned his appeal. In his brief, however, plaintiff states that he abandoned his appeal only out of concern for the complexity of the case on appeal, but he does not concede that the action is controlled by ERISA. We cannot review the trial court's actions in this case without first determining whether the court applied the correct law to plaintiff's claims.

Subject to certain well-defined exceptions, ERISA covers any "employee benefit plan" which is established or maintained by an employer or an employee organization. 29 U.S.C. § 1003. The definition of "employee benefit plan" includes medical insurance plans. 29 U.S.C. § 1002(1), (3). Although the exact details of the group insurance plan at issue in this case are unclear, the record does show that the plan was maintained by plaintiff, who was decedent's husband, to provide insurance for employees of businesses he owned. Therefore, the plan is subject to the provisions of ERISA.

Under ERISA, a beneficiary of a covered plan may bring a civil action to obtain several types of relief. 29 U.S.C. § 1132(a). Jurisdiction of civil actions is vested exclusively in the federal courts with the exception of actions under subsection (a)(1)(B) of 29 U.S.C. § 1132, for which jurisdiction is concurrent in state and federal courts. 29 U.S.C. § 1132(e)(1). Subsection (a)(1)(B) of the statute provides that a beneficiary may bring an action "to recover

benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." The claim on which plaintiff obtained summary judgment was a claim for benefits due. Therefore, the trial court could properly exercise its jurisdiction over that claim.

### III.

Having determined that plaintiff's claim for benefits is within the scope of ERISA, we proceed to consider whether the trial court erred in entering summary judgment in plaintiff's favor.

### A.

[2]   We begin by noting that the provisions of ERISA pre-empt all state laws that "relate to any employee benefit plan." 29 U.S.C. § 1144(a). The pre-emption includes state decisional law as well as statutes. 29 U.S.C. § 1144 (c). ERISA also pre-empts state common-law contract and tort actions. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed. 2d 39 (1987). The civil enforcement provisions of ERISA are exclusive and are governed by federal substantive law. *Id.* at 54-56, 107 S.Ct. at 1556-58, 95 L.Ed. 2d at 52-53. This broad pre-emption of state law requires this Court to follow federal decisional law in actions arising under ERISA. *See Treadway v. Railroad Co.*, 53 N.C. App. 759, 760, 281 S.E. 2d 707, 709 (1981) (federal decisional law followed in actions arising under the Federal Employers' Liability Act).

Until recently, the federal courts have refused to reverse a denial of benefits in an action under ERISA unless the decision to deny benefits was arbitrary or capricious. *See, e.g., Holland v. Burlington Indus., Inc.*, 772 F. 2d 1140, 1148 (4th Cir. 1985), *aff'd mem.*, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed. 2d 559, *cert. denied*, 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed. 2d 562 (1986). In a recent decision, however, the United States Supreme Court held that a denial of benefits under ERISA is subject to *de novo* review unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the plan's terms. *Firestone Tire and Rubber Co. v. Bruch*, --- U.S. ---, ---, 109 S.Ct. 948, 956, 103 L.Ed. 2d 80, 95 (1989). The Supreme Court's decision was based upon established principles of trust law. *Id.*

In the present case, the contract of insurance provides that benefits are payable "for medically necessary reasonable and

customary charges as determined by [defendant]." Although this provision could be interpreted as granting discretionary authority to defendant, it does not clearly vest defendant with discretion to determine eligibility for benefits. Under the law of trusts, the authority of the trustee is determined from the language of the instrument but, if the language is unclear, the nature of the trustee's authority depends upon several factors including the situation of the beneficiary, the effect of classifying the power as discretionary, and the purposes of the trust. G. Bogert & G. Bogert, Trusts and Trustees § 552 at 66 (2d rev. ed. 1980). *See also Davison v. Duke University*, 282 N.C. 676, 708, 194 S.E. 2d 761, 781, 57 A.L.R. 3d 1008, 1035 (1973) (the extent of the trustee's discretion depends upon the terms of the trust and the nature of the trustee's powers interpreted in light of the circumstances at the time of execution). Applying these principles to the contract in this case, we find that it does not grant defendant discretionary authority to determine eligibility for benefits or to interpret the contract terms. Accordingly, defendant's denial of benefits is subject to *de novo* review.

B.

[3] Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Hagler v. Hagler*, 319 N.C. 287, 289, 354 S.E. 2d 228, 231 (1987). Defendant does not dispute that the contract of insurance in this case provides coverage for home nursing care under appropriate circumstances. The contract's list of benefits includes "fees for private duty nursing by a registered or licensed practical nurse." The contract defines "private duty nursing" (hereinafter "PDN") as follows:

> [S]pecial medically necessary nursing care ordered by a doctor when routine nursing care is insufficient because of a patient's condition. Private duty nursing does not include the services of a sitter or services rendered by a member of the patient's family or household.

The contract also contains the following definition of the term "medically necessary":

> The use of services or supplies as provided by a hospital, skilled nursing facility, doctor or other provider required to identify or treat a participant's illness or injury and which, as determined by the Corporation are

OVERCASH v. BLUE CROSS AND BLUE SHIELD

[94 N.C. App. 602 (1989)]

1. consistent with the symptoms or diagnosis and treatment of the participant's condition, disease, ailment, or injury,

2. appropriate with regard to standards of good medical practice,

3. not solely for the convenience of the participant, his or her doctor, hospital or other provider, and

4. the most appropriate supply or level of service which can be safely provided to the participant. When specifically applied to an inpatient, it further means that the participant's medical symptoms or condition require that the diagnosis or treatment cannot be safely provided to the participant as an outpatient.

Plaintiff contends that he is entitled to summary judgment because: (i) defendant's interpretation of the term "medically necessary" is erroneous as a matter of law, and (ii) the undisputed facts show that the PDN provided for decedent from 15 August 1986 to 9 January 1987 was medically necessary.

C.

We first consider plaintiff's contentions concerning the interpretation of contract terms. Plaintiff's contention that any ambiguities must be resolved in his favor is without merit. Plaintiff mistakenly relies on the general rule for construction of insurance contracts. *See Industrial Center v. Liability Co.*, 271 N.C. 158, 162, 155 S.E. 2d 501, 504-05 (1967). The federal courts have held that, because actions under ERISA are controlled by federal substantive law, state contract law does not apply. *See Brown v. Retirement Comm. of the Briggs & Stratton Retirement Plan*, 797 F. 2d 521, 528-29 (7th Cir. 1986), *cert. denied*, 479 U.S. 1094, 107 S.Ct. 1311, 94 L.Ed. 2d 165 (1987); *Jung v. FMC Corp.*, 755 F. 2d 708, 713-15 (9th Cir. 1985). The Supreme Court's decision in *Firestone Tire and Rubber Co. v. Bruch, supra* merely changed the standard of review in actions for benefits due; it did not alter the substantive law governing the interpretation of benefit plans. The Court affirmed that part of the decision of the Court of Appeals for the Third Circuit which rejected the arbitrary and capricious standard of review. In doing so, the Supreme Court also tacitly adopted that part of the decision by the Court of Appeals for the Third Circuit which expressly rejected a rule of construction that would resolve all ambiguities in favor of the beneficiaries. *Bruch v. Firestone Tire and Rubber Co.*, 828 F. 2d 134, 145 (3d Cir. 1987), *aff'd in part and rev'd in part*, --- U.S. ---, 109 S.Ct. 948, 103 L.Ed. 2d 80 (1989).

The Court of Appeals applied principles governing construction of contracts between parties bargaining at arm's length. *Id.*

In any event, we find no ambiguity in the contract terms at issue in this case. Plaintiff contends that defendant erroneously interpreted the contract to provide coverage for PDN only when the patient requires "skilled" as opposed to "custodial" care. The record does show that defendant's decision to deny benefits was based on its conclusion that decedent did not require skilled nursing services for the period in question and that the nurses who cared for decedent during that time provided primarily custodial services. Defendant's internal guidelines for review of claims for PDN services make clear that such services are covered only when the patient requires skilled care. Plaintiff argues that the skilled care requirement is inconsistent with the contract's definition of "medically necessary." We disagree.

The contract defines PDN as "special medically necessary nursing care ordered by a doctor when routine nursing care is insufficient because of a patient's condition." Under the contract, services are "medically necessary" if they are required to identify or treat the patient's illness, they are not provided solely for purposes of convenience, and they are "the most appropriate supply or level of service which can be safely provided to the participant." The contract specifically excludes coverage for custodial care, which is defined as services or supplies provided to an individual "primarily to assist him or her in the activities of daily living."

Thus, defendant's interpretation is supported by the plain meaning of the contract's provisions. Even under State law, courts must enforce insurance contracts according to their terms where the language of the policy is plain, unambiguous, and susceptible of only one reasonable construction. *Duke v. Insurance Co.*, 286 N.C. 244, 247, 210 S.E. 2d 187, 189 (1974). Although "skilled care" is not included in the definitions of PDN or "medically necessary," it is clear that coverage does not extend to services which are not required by the patient's condition. Since PDN does not include routine nursing services and custodial services are expressly excluded, coverage for PDN must be limited to those cases where the patient requires skilled nursing services. Accordingly, plaintiff is not entitled to summary judgment on the grounds that defendant's denial of benefits was based upon an erroneous interpretation of the contract.

## D.

[4]   Therefore, in order to prevail on his motion for summary judgment, plaintiff must establish that defendant's conclusion that decedent did not require skilled nursing services for the period in question is erroneous as a matter of law.

There is no dispute in this case as to the nature of decedent's illness, the treatment she received, or the actual services performed by the nurses who cared for her. Defendant's decision to deny benefits was based upon its review of decedent's hospital records and the notes of the nurses. The records show that, as of August 1986, decedent's disease had progressed to the point where she was suffering from congestive heart failure, respiratory problems, and renal failure. Her mobility was extremely limited, but she was able to feed herself and walk to the bathroom with assistance. Because there is no effective treatment for amyloidosis, the treatments decedent received were designed to prolong her life and alleviate her symptoms.

Decedent's condition required her to receive oxygen during the entire period in question. Her treatment included a variety of medications, all of which were taken orally. Her intake and output of fluids and solids was carefully monitored, and she also required care for a skin condition. Her condition and treatment remained substantially the same until her hospitalization in January 1987.

To support his contention that decedent required skilled nursing services, plaintiff primarily relies upon the affidavit and deposition of Dr. James H. Black, the physician who recommended the services. Dr. Black admitted on deposition that most of the services recorded in the nurses' notes were not of the type that ordinarily require skilled nurses. He maintained, however, that the severity of decedent's illness, her complex medication regime, and the possibility that her condition could become life-threatening at any time required skilled nurses to constantly monitor her condition. For this reason, he believed that decedent required twenty-four hour skilled care, either at home, in a hospital, or in a nursing home.

Applied to defendant's own standards, Dr. Black's opinion could provide a sufficient basis to justify payment of benefits for PDN. The services performed by the nurses in this case were not the type of "invasive" procedures, such as intravenous injections, which

OVERCASH v. BLUE CROSS AND BLUE SHIELD

[94 N.C. App. 602 (1989)]

ordinarily require skilled care under defendant's standards. Defendant's internal guidelines clearly show, however, that the determination of whether a patient requires skilled care does not depend solely upon the type of services provided but also must be based upon the patient's particular circumstances. For example, the guidelines provide that the administration of oral medication is a skilled service when it requires close monitoring for possible side effects or changes in dosage. One of defendant's medical consultants stated on deposition that even purely custodial tasks may rise to the level of skilled care when the patient's condition requires constant attention. By the same token, however, the guidelines also provide that normally skilled services may become non-skilled when they are prolonged and a non-skilled person may be taught to administer them—such as insulin injections for diabetics.

Under these standards, defendant's employees and consultants concluded that decedent did not require skilled care during the period in question. Defendant offered the depositions of three physicians who reviewed decedent's case and disagreed with Dr. Black's opinion that she required twenty-four hour skilled care. Defendant's position is supported by Dr. Black's admission that the bulk of the nurses' services were custodial rather than skilled and plaintiff's own deposition testimony that he either could have performed or learned to perform most of those services. Although the nurses occasionally performed skilled services such as drawing blood, one of defendant's consultants testified on deposition that these services could have been performed by a visiting nurse. Decedent had received care from visiting nurses prior to her hospitalization in August 1986, and another of defendant's consultants testified that her condition was no worse after the hospitalization. Defendant's experts were of the opinion that neither decedent's condition nor her treatment required the constant attention of skilled nurses.

With the evidence in this posture, the trial court erred in entering summary judgment for plaintiff on his claim for benefits due under the contract. In opposition to plaintiff's motion, defendant offered evidence tending to show that decedent did not require skilled nursing services and that the PDN provided for her was, therefore, not medically necessary within the meaning of the contract. There is a clear difference of opinion between plaintiff's expert and defendant's experts as to the necessity for the services in question. Because the insurance contract only provides coverage

for medically necessary services, there is a genuine issue of material fact which precludes summary judgment.

### E.

[5] We note that plaintiff also contends that defendant admitted that the services were medically necessary in its answer to an interrogatory. Plaintiff's argument is based upon the following interrogatory and answer:

> 16. Describe in detail each and every nursing service provided to Mrs. Overcash between January 15, 1987, and March 10, 1987, which you contend was "medically necessary."

> ANSWER: Nursing services provided to Mrs. Overcash on a regular basis between January 15, 1987 and March 10, 1987 which were covered by the certificate included: (1) Nursing observation related to (a) congestive heart failure, (b) pulmonary function and respiratory distress, (c) renal failure, (d) seizure activity, and (e) electrolyte imbalance; (2) adjustment of oxygen flow according to patient's condition; (3) adjustment of complex medical program frequently; (4) insertion and expert management of foley catheter; (5) communication of patient's status to doctors; (6) received and carried out doctor's orders; and (7) administration of I.M. medications for pain, nausea and swelling.

The above-quoted answer concerns the services rendered after decedent's hospitalization in January 1987, and defendant paid benefits for those services. Although many of the services are the same as those rendered during the period for which defendant denied coverage, two of the services—insertion and management of a catheter and I.M. (intramuscular) medication—are the type of invasive procedures that ordinarily require skilled care. Also, one of defendant's consultants testified that decedent's condition had significantly deteriorated at that time and, therefore, skilled care was required. We have already noted that the same services may be classified as skilled or non-skilled depending upon the patient's condition. Therefore, the answer to the interrogatory does not constitute an admission as to the necessity for PDN from 15 August 1986 to 9 January 1987.

### IV.

[6] Having determined that a triable issue of fact exists, we now consider whether plaintiff has the right to trial by jury. The prevail-

ing view in the federal courts has been that actions under ERISA being equitable in nature, there is no right to a jury trial in actions for benefits due unless the plan administrator has admitted to owing a monetary obligation to the beneficiary. *See Wardle v. Central States, Southeast and Southwest Areas Pension Fund*, 627 F. 2d 820, 829-30 (7th Cir. 1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed. 2d 841 (1981); Note, *The Right to Jury Trial in Enforcement Actions Under Section 502(a)(1)(B) of ERISA*, 96 Harv. L. Rev. 737 (1983). Some courts have held, however, that actions for benefits under 29 U.S.C. § 1132(a)(1)(B) are legal in nature and may be appropriate for jury trial. *See Abbarno v. Carborundum Co.*, 682 F. Supp. 179 (W.D.N.Y. 1988). In arguing for the right to a jury trial, plaintiff contends that State constitutional law provides such a right and the pre-emptive effect of ERISA does not abridge that right. We agree.

Preliminarily, we note that those courts which have found no right to a jury trial in actions under ERISA have not based their decisions solely upon the equitable nature of the action. The courts have also reasoned that jury trials are incompatible with the application of the arbitrary and capricious standard of review. *See Wardle v. Central States, Southeast and Southwest Areas Pension Fund*, 627 F. 2d at 830. Since denial of benefits is now subject to *de novo* review, that consideration is no longer present.

Article I, § 25 of the North Carolina Constitution guarantees the right to trial by jury in "all controversies at law respecting property." The constitutional right to trial by jury applies in all cases where the right existed at common law or by statute in 1868. *N.C. State Bar v. DuMont*, 304 N.C. 627, 641, 286 S.E. 2d 89, 98 (1982). Although the present case is an action under ERISA, the right to benefits under the plan is a matter of contract and, prior to the enactment of ERISA, courts would review the denial of benefits in the same manner as any other contract claim. *See Firestone Tire and Rubber Co. v. Bruch*, --- U.S. at ---, 109 S.Ct. at 955, 103 L.Ed. 2d at 94. Even were we to accept the federal courts' characterization of the action as equitable, our Supreme Court has held that issues of fact must be tried by a jury regardless of the equitable nature of the action. *Erickson v. Starling*, 235 N.C. 643, 654, 71 S.E. 2d 384, 392 (1952). Therefore, plaintiff in this case has the right to a jury trial under the law of this State.

Moreover, the validity of federal decisions finding no right to trial by jury in actions under 29 U.S.C. § 1132(a)(1)(B) may be questioned in light of the Supreme Court's decision in *Firestone Tire and Rubber Co. v. Bruch, supra.* Assuming for purposes of argument that those decisions remain good precedent, we hold that they are not controlling in an ERISA action brought in a court of this State. ERISA pre-empts state laws "insofar as they may now or hereafter relate" to plans covered by the statute. 29 U.S.C. § 1144(a). This pre-emption prohibits state laws from varying or supplementing the substantive rights, obligations, and remedies provided by ERISA. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. at 56-57, 107 S.Ct. at 1557-58, 95 L.Ed. 2d at 53-54.

It is now clear that the right to a jury trial in federal court is governed by federal law even where the action arises under substantive state law. 9 C. Wright & A. Miller, Federal Practice and Procedure § 2303 (1971). Similarly, state rules governing jury trials generally control actions under federal law brought in state courts. *See Minneapolis & St. Louis R.R. v. Bombolis,* 241 U.S. 211, 36 S.Ct. 595, 60 L.Ed. 961 (1916). Federal law must control, however, where the right to a jury trial is a substantial part of the rights accorded by a federal statute. *Dice v. Akron, Canton & Youngstown R.R.,* 342 U.S. 359, 363, 72 S.Ct. 312, 315, 96 L.Ed. 398, 404 (1952) (state law cannot deny the right to a jury trial in actions under the Federal Employers' Liability Act).

In the present case, the right to a jury trial under the law of this State does not conflict with any of the substantive provisions of ERISA. The application of State law in this situation does not abridge any of the rights granted by the Act, nor does it provide a remedy which would otherwise be unavailable under the Act. The right to a jury trial granted by our Constitution is not a right which "relates to" employee benefit plans. Therefore, we hold that State law controls and plaintiff is entitled to have the factual controversy in this action submitted to a jury.

V.

[7] Because we are reversing the trial court's entry of summary judgment for plaintiff, we also vacate and remand the court's award of attorney's fees to plaintiff for reconsideration following a final adjudication of plaintiff's claim. The trial court must also reconsider its denial of defendant's claim for fees. Once again, however, we must clarify the correct law to be applied by the trial court.

OVERCASH v. BLUE CROSS AND BLUE SHIELD

[94 N.C. App. 602 (1989)]

Under ERISA, the trial court has discretion to award attorney's fees and costs to either party. 29 U.S.C. § 1132(g)(1). The federal circuit courts almost without exception have adopted a five-factor test, first set out in *Eaves v. Penn*, 587 F. 2d 453, 465 (10th Cir. 1978), to determine the parties' entitlement to costs and fees. *See Gray v. New England Tel., and Tel. Co.*, 792 F. 2d 251, 257-59 (1st Cir. 1986). *But see Bittner v. Sadoff & Rudoy Indus.*, 728 F. 2d 820 (7th Cir. 1984) (rejecting the five-factor test as applied to a defendant). In view of its almost unanimous acceptance by the federal courts, we adopt the five-factor test for ERISA actions brought in the courts of this State. The five factors to be considered by the trial court are (i) the degree of the parties' culpability or bad faith; (ii) the ability of the parties to satisfy an award of attorney's fees; (iii) whether an award of fees would deter similar conduct in the future; (iv) whether the party seeking fees sought to benefit all plan beneficiaries or resolve a significant legal question regarding ERISA; and (v) the relative merits of the parties' positions. *Iron Workers Local No. 272 v. Bowen*, 624 F. 2d 1255, 1266 (5th Cir. 1980). Every factor will not be relevant in all cases, no single factor is determinative, and the list is not exclusive. *Id.* Nevertheless, the trial court must support any award of fees in this case with findings showing that the award is based upon the above guidelines or similar considerations. We also note that, under ERISA, the prevailing party is not automatically entitled to an award of fees, *McKnight v. Southern Life and Health Ins. Co.*, 758 F. 2d 1566, 1572 (11th Cir. 1985), and the court may award fees to the unsuccessful party in an appropriate case. *Sokol v. Bernstein*, 812 F. 2d 559 (9th Cir. 1987).

As in all cases where statutes provide for an award of a reasonable fee, the trial court must make findings to support the amount of the award. *See Owensby v. Owensby*, 312 N.C. 473, 476-77, 322 S.E. 2d 772, 774-75 (1984); *Epps v. Ewers*, 90 N.C. App. 597, 600, 369 S.E. 2d 104, 105 (1988). *Accord Ursic v. Bethlehem Mines*, 719 F. 2d 670 (3d Cir. 1983). Both the decision to award fees under 29 U.S.C. § 1132(g)(1) and the amount of the award are matters within the trial court's discretion and, if supported by proper findings, an award will not be disturbed absent an abuse of discretion.

VI.

[8]    We next consider whether the trial court erred in awarding plaintiff $500.00 in attorney's fees as a sanction pursuant to Rule

11 of the N.C. Rules of Civil Procedure. The trial court awarded the fees for plaintiff's expenses in defending against defendant's post-trial motion for attorney's fees under ERISA and Rule 11. In its motion, defendant contended that it was entitled to recover the fees it expended in defending against plaintiff's claims under ERISA for extra-contractual and punitive damages because those claims were baseless and made for improper purposes. Plaintiff voluntarily dismissed the claims after the trial court awarded plaintiff attorney's fees in connection with his claim for benefits.

Rule 11 permits the court to impose appropriate sanctions, including an order to pay attorney's fees to the opposing party, if a pleading or motion has no basis in law or fact or is interposed for an improper purpose such as harassment or delay. If the trial court finds that grounds for imposing sanctions exist, Rule 11 requires the court to impose sanctions. *Turner v. Duke University*, 91 N.C. App. 446, 449, 372 S.E. 2d 320, 323, *disc. rev. allowed*, 323 N.C. 628, 374 S.E. 2d 601 (1988) (quoting *Westmoreland v. CBS, Inc.*, 770 F. 2d 1168 (D.C. Cir. 1985)). The trial court in this case did not specify the grounds for imposition of sanctions. Plaintiff contends that defendant's post-trial motion was baseless and improper because (i) the trial court had already denied defendant's claim for attorney's fees pursuant to 29 U.S.C. § 1132(g)(1); (ii) the action was terminated when plaintiff voluntarily dismissed the remaining claims; and (iii) defendant had filed a notice of appeal from the earlier order concerning attorney's fees, thereby divesting the trial court of jurisdiction to consider the matter.

We first consider whether the trial court had jurisdiction to rule on defendant's motion. The termination of the action and defendant's filing of notice of appeal did not automatically deprive the court of jurisdiction to impose sanctions pursuant to Rule 11. *See Langham-Hill Petroleum, Inc. v. Southern Fuels Co.*, 813 F. 2d 1327 (4th Cir.), *cert. denied*, --- U.S. ---, 108 S.Ct. 99, 98 L.Ed. 2d 60 (1987); *Orange Production Credit Assoc. v. Frontline Ventures Ltd.*, 792 F. 2d 797, 801 (9th Cir. 1986). Under G.S. 1-294, an appeal does not bar the trial court from proceeding "upon any other matter included in the action and not affected by the judgment appealed from."

In this case, however, defendant had appealed from the earlier denial of its claim for attorney's fees under ERISA. Although defendant's post-trial motion also sought fees under Rule 11, the

motion was based upon the ERISA action and, therefore, any award of attorney's fees would be governed by 29 U.S.C. § 1132(g). Courts should not impose sanctions under Rule 11 when relief is available under another provision which more specifically addresses the situation. *See Zaldivar v. City of Los Angeles*, 780 F. 2d 823, 830 (9th Cir. 1986). Since the substantive basis of defendant's motion had been adjudicated in the earlier order, defendant's appeal therefrom divested the trial court of its jurisdiction to entertain the post-trial motion.

Nevertheless, we do not find that defendant's motion warranted sanctions under Rule 11. Although we do not consider the merits of plaintiff's dismissed claims, extra-contractual damages are generally not available in an action under ERISA. *See Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed. 2d 96 (1985); *Drinkwater v. Metropolitan Life Ins. Co.*, 846 F. 2d 821, 825 (1st Cir.), *cert. denied*, --- U.S. ---, 109 S.Ct. 261, 102 L.Ed. 2d 249 (1988). Moreover, we also note that plaintiff's claims for extra-contractual damages should have been dismissed for lack of subject-matter jurisdiction. Under ERISA, the only civil action over which a state court may exercise jurisdiction is an action to recover benefits or enforce rights under a plan. 29 U.S.C. § 1132(e)(1), (a)(1)(B). Extra-contractual damages are clearly unavailable in a state court action to recover benefits. Thus, defendant's contention that plaintiff's claims were baseless was not without merit.

Although defendant's motion was not substantively baseless, it was, however, procedurally improper in that it sought relief which the trial court had previously denied. Rule 11 sanctions may be appropriate when a party files a motion which is virtually identical to a previously denied motion. *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 611 F. Supp. 281, 285 (S.D.N.Y. 1985). The transcript of the hearing on the original motions for attorney's fees in this case shows, however, that the trial court ruled on the motions before plaintiff dismissed his remaining claims. Defendant's counsel indicated at the hearing that he believed that the remaining claims were to be tried and he was unprepared to litigate the issue of attorney's fees. In addition, counsel noted an objection to the trial court's consideration of attorney's fees before adjudicating plaintiff's remaining claims. Plaintiff did not dismiss his remaining claims until after the trial court awarded him fees. Defendant filed its post-trial motion because it felt that

it did not obtain a fair hearing on the issue of attorney's fees. Thus, although defendant's proper remedy was by way of appeal, we do not find its motion to be baseless or interposed for an improper purpose so as to justify sanctions under Rule 11.

For the foregoing reasons, we reverse the trial court's entry of summary judgment for plaintiff on his claim for benefits and remand the case for a jury trial on that claim. The trial court's award of attorney's fees to plaintiff is vacated and remanded for reconsideration in accordance with this opinion. The trial court's award of Rule 11 sanctions to plaintiff is reversed.

Judgment entered 19 April 1988 reversed and remanded.

Order entered 24 May 1988 vacated and remanded.

Order entered 15 August 1988 reversed.

Judges PHILLIPS and COZORT concur.