**In re CHARLOTTE COMMERCIAL GROUP, INC., Debtor.**

**Charlotte Commercial Group, Inc., Plaintiff,**

**v.**

**Fleet National Bank, Defendant.**

**Bankruptcy No. 01–52684.
Adversary No. 01–6044W.**

United States Bankruptcy Court,
M.D. North Carolina,
Winston–Salem Division.

Feb. 3, 2003.

David Meschan, Greensboro, NC, for Debtor.

William P. Miller, High Point, NC, for Trustee.

## MEMORANDUM OPINION

CATHARINE R. CARRUTHERS, Bankruptcy Judge.

THIS MATTER coming on before the undersigned bankruptcy judge in Winston–Salem, North Carolina upon the Motion by Fleet National Bank to Strike Plaintiff's Jury Trial Demand and Statement Pursuant to LBR 9015–1. This Motion came on for hearing on July 11, 2002, at which time the court entered a scheduling order to allow the parties time to confer with their respective clients and possibly consent to conduct non-binding alternative dispute resolution. As the parties were unable to agree to conduct some form of alternative dispute resolution, this matter is once again before the court. After considering the matters set forth in the pleadings and the supporting briefs, the court makes the following findings of fact and conclusions of law:

## BACKGROUND

The Plaintiff, Charlotte Commercial Group, Inc. ("CCG"), was engaged in the business of purchasing automobile financing receivables from retail vendors of motor vehicles. On September 24, 1998, CCG entered into a Loan and Security Agreement with Fremont Financial Corporation pursuant to which Fremont provided a revolving loan to CCG which was secured by automobile receivables. Subsequently, this loan was assigned to Summit Bank and the parties entered into an amended agreement (the "Finance Agreement") which provided for a maximum principal amount of ten million dollars ($10,000,000) with all interest treated as an advance and added to the principal balance on a month-

ly basis. The termination date for the Finance Agreement was September 24, 2003. The terms of the Finance Agreement obligated Summit and its successor, Fleet National Bank ("Fleet"), to make advances to CCG based upon a formula contained within the Finance Agreement. The Finance Agreement provided that advances were to be based upon a monthly borrowing base certificate ("the Borrowing Base Certificate") prepared by CCG in accordance with sound accounting practice, as defined in the Finance Agreement.

On August 27, 2001, Fleet declared CCG in default under the terms of the Finance Agreement. Fleet claimed that CCG inaccurately prepared the Borrowing Base Certificates for the months of June and July of 2001. Accordingly, Fleet did not make any further advances and demanded that CCG immediately pay the sum of $769,561.00, which Fleet asserted was an over advance. Fleet further claimed that it was entitled to exercise its powers pursuant to the Finance Agreement upon default to foreclose upon its collateral in the event that payment was not made by CCG. CCG has consistently maintained that the Borrowing Base Certificates for the months of June (submitted July 13, 2001) and July (submitted on August 15, 2001) were prepared in accordance with sound accounting practice, and that those certificates correctly certified that funds were available to CCG for advance.

On October 29, 2001, Fleet filed suit in the United States District Court for the Eastern District of Pennsylvania and alleged that the unpaid balance of the loan was due and that CCG's Chief Executive Officer, Robert M. Sauls ("Sauls"), breached a validity guaranty agreement and committed fraud by knowingly submitting incorrect Borrowing Base Certificates. As a result, on November 13, 2001, CCG filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the Middle District of North Carolina. CCG operated its business under the protection of the bankruptcy court until January 11, 2002, at which time the court granted Fleet's motion for relief from stay and CCG ceased all business operations. On March 15, 2002, the bankruptcy court entered an order appointing William P. Miller as Chapter 11 Trustee. Finally, on April 26, 2002, the court entered an order converting the case to a case under Chapter 7 of the Bankruptcy Code and appointing William P. Miller as the Chapter 7 Trustee.

The present action arises as an adversary proceeding filed on December 17, 2001 by CCG against Fleet for breach of the Finance Agreement, breach of the duty of good faith and fair dealing, and violation of North Carolina's Unfair Trade Practices Act (UTPA) pursuant to N.C. Gen.Stat. § 75–1.1.[1] These claims arise out of the termination of credit by Fleet, and the default and ensuing bankruptcy of CCG. In response to the Plaintiff's complaint, Fleet filed a counterclaim for amounts due under the Note and Finance Agreement.[2]

On May 13, 2002, the Plaintiff filed a demand that it be afforded a trial by jury for all issues addressed in Fleet's Answer and Counterclaim. In response, Fleet

---

1. In a prior order, the court dismissed the Plaintiff's claim for unfair and deceptive trade practices. CCG has appealed this decision.

2. In addition to the counterclaim, Fleet initiated a third party action against Robert Sauls and Sam Stark alleging damages in the amount of all unpaid advances to CCG under the Finance Agreement, plus interest, fees and costs. On December 9, 2002, the court entered an order dismissing the Third Party Complaint for failure to state a proper third-party claim pursuant to Rules 12(b)(6) and Rule 14(a) of the Federal Rules of Civil Procedure.

filed a motion to strike the Plaintiff's demand for a jury trial. Fleet argues that (1) CCG waived its right to a jury trial by voluntarily filing a petition for bankruptcy relief; (2) CCG expressly waived its right to a jury trial in the Finance Agreement; and (3) CCG may not selectively invoke provisions of the Finance Agreement while disclaiming others.

## ANALYSIS

■ The right to a jury trial is guaranteed by the Seventh Amendment of the United States Constitution which provides "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." In 1989, the Supreme Court held that a party that had not filed a claim against the bankruptcy estate had a right to a jury trial in a fraudulent conveyance action by a trustee, notwithstanding the designation of a fraudulent conveyance action as a core proceeding in 28 U.S.C. § 157(b)(2)(H). *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). The Court reasoned that the Seventh Amendment protects a litigant's right to a jury trial if the cause of action is legal in nature and it involves a matter of "private right." *Id.* at 54, 109 S.Ct. at 2797. The following year, in *Langenkamp v. Culp,* 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990), the Court held that creditors who had filed claims against the bankruptcy estate had no Seventh Amendment right to a jury trial because, by filing a claim, the creditors had submitted themselves to the equitable jurisdiction of the bankruptcy court. *Id.* at 45, 111 S.Ct. 330. Thus, through *Granfinanciera* and *Langenkamp,* the Supreme Court clearly established that jury trials are available in some bankruptcy matters and a creditor forfeits the right to a jury trial by filing a proof of claim.

Therefore, it is undisputed that as a creditor that filed a proof of claim in this bankruptcy proceeding, Fleet is not entitled to a jury trial. Indeed, district courts in both the Eastern District and the Western District of North Carolina have held that where a debtor brings an adversary proceeding and the creditor files a counterclaim against the debtor, the creditor has succumbed to the jurisdiction of that court and waived its right to a jury trial. *See In re Hudson,* 170 B.R. 868 (E.D.N.C. 1994); *In re Robin Hood, Inc.,* 192 B.R. 124 (W.D.N.C.1995). The same rules should apply to debtors who voluntarily file for bankruptcy protection and subsequently file an adversary proceeding against a creditor.

The question of whether a debtor has a Seventh Amendment right to a jury trial was addressed by the Seventh Circuit in *In re Hallahan,* 936 F.2d 1496 (7th Cir. 1991). In *Hallahan,* a former employer and creditor of the debtor filed a proof of claim and a complaint for nondischargeability claiming that the debtor had violated the terms of his employment contract. The court concluded that Hallahan had no Seventh Amendment right to a jury trial on his dischargeability claim. The court based its decision on two findings. First, the court reasoned that a dischargeability proceeding is an equitable claim for which a party cannot obtain a jury trial pursuant to *Granfinanciera.* Second, the court stated:

> Even if we were to assume that the dischargeability action was legal in nature, however, Hallahan cannot claim a right to jury trial because, as a Chapter 7 debtor, he voluntarily submitted his case to bankruptcy court. The Supreme Court did not address the extent of the debtor's Seventh Amendment right to jury trial in bankruptcy court in *Granfinanciera.* However, if creditors "by presenting their claims ... subject[ ]

themselves to all the consequences that attach to an appearance," thereby losing any jury trial right otherwise guaranteed by the Seventh Amendment, debtors who initially choose to invoke the bankruptcy court's jurisdiction to seek protection from their creditors cannot be endowed with any stronger right. A defendant or potential defendant to an action at law cannot initiate bankruptcy proceedings, thus forcing creditors to come to bankruptcy court to collect their claims, and simultaneously complain that the bankruptcy forum denies him or her a jury trial.

*Id.* at 1505 (citations omitted). Similarly, in *In re McLaren*, 3 F.3d 958 (6th Cir. 1993), the Sixth Circuit held the Seventh Amendment confers no right to a jury trial on a debtor who files voluntarily for bankruptcy and is a defendant in an adversary proceeding. *Id.* at 961.

In this instance, the debtor is the plaintiff in the adversary proceeding, not the defendant. Nonetheless, the court finds that, by voluntarily seeking out the jurisdiction of the bankruptcy court to resolve its dispute with Fleet, the Plaintiff gave up the right to a jury trial. Numerous courts have considered this issue and held that a debtor who is a plaintiff in an adversary proceeding has submitted his claims to the equitable jurisdiction of the court and has no entitlement to a jury trial. *See In re Hutchins*, 211 B.R. 322 (Bankr.E.D.Ark. 1997) (debtor was not entitled to a jury trial on prepetition claims); *In re Romar International Georgia, Inc.*, 198 B.R. 407 (Bankr.M.D.Ga.1996) (debtor did not have a right to a jury trial in a lender liability action which invoked the bankruptcy court's equitable powers to allow, disallow, or offset mutual debts even though the claim was legal in nature); *In re Lyons*, 200 B.R. 459 (Bankr.S.D.Ga.1994) (the debtor has waived his right to a jury trial by filing his bankruptcy petition); *In re*

*Auto Imports, Inc.*, 162 B.R. 70 (Bankr. D.N.H.1993) (the debtors, by voluntarily seeking the protection of the bankruptcy court, with the attendant triggering of the claims allowance process, have implicitly waived any right to a jury trial that may have existed outside the bankruptcy); *In re Haile Co.*, 132 B.R. 979 (Bankr.S.D.Ga. 1991) (the waiver principle of *Granfinanciera* logically extends to a debtor who voluntarily petitions the court for bankruptcy protection and files an adversary proceeding seeking affirmative relief); *In re W.S.C., Inc.*, 286 B.R. 321 (Bankr. M.D.Tenn.2002) (no right to jury trial when debtor's causes of action are integrally related to creditor's proof of claim and cannot be decided without also resolving the allowance or disallowance of creditor's claim).

The Plaintiff argues that the principle that the debtor waives the right to a jury trial simply by filing a bankruptcy petition has not been fully endorsed by some circuits. In *Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242 (3rd Cir.1994), the Third Circuit declined to adopt the waiver theory as set forth in *Hallahan*, but concluded that the debtors were not entitled to a jury trial for their legal malpractice claims, which were equitable in nature and part of the allowance and disallowance of claims. In *Germain v. Connecticut Nat'l Bank*, 988 F.2d 1323 (2nd Cir.1993), the Second Circuit determined that the trustee's claim for tortious interference arose post-petition and was unrelated to the allowance of the creditor's claim. While these cases stand for the principle that a debtor does not waive the right to a jury trial by the mere filing of a bankruptcy petition, both cases clearly state that a debtor is not entitled to a jury trial when the dispute is part of the claims-allowance process or affects the hierarchical reordering of creditors' claims. *Bill-*

*ing,* 22 F.3d at 1253; *Germain,* 988 F.2d at 1330.

■ In this case, the Plaintiff invoked an equitable forum to adjudicate the debtor-creditor relationship in claims allowance and restructuring. Two weeks before CCG filed for bankruptcy, Fleet initiated an action against CCG in the Eastern District of Pennsylvania. CCG filed a voluntary petition under Chapter 11 of the Bankruptcy Code, thereby staying Fleet's action. CCG then filed an adversary proceeding against Fleet in bankruptcy court, forcing Fleet to bring its claim against CCG as a counterclaim in the adversary proceeding. Rather than defend itself in the Pennsylvania action, CCG clearly sought out the protection of the bankruptcy court and chose an equitable forum in which to assert its claims against Fleet. Furthermore, CCG's cause of action against Fleet is integrally related to Fleet's proof of claim. CCG alleges that Fleet breached the Finance Agreement. Fleet's proof of claim is based upon amounts owed pursuant to the Finance Agreement. The actions against Fleet cannot be decided without also resolving the allowance, disallowance, priority or offset of Fleet's proof of claim. Because CCG voluntarily filed a bankruptcy petition and commenced an adversary proceeding in bankruptcy court that is patently related to Fleet's proof of claim, CCG is not entitled to a jury trial. In addition to waiving any right to a jury trial by submitting to the jurisdiction of the bankruptcy court, CCG expressly and knowingly waived its right to a jury trial in the Finance Agreement. The right to a trial by jury in federal bankruptcy court is determined by federal law. *Simler v. Conner,* 372 U.S. 221, 222, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963). *See also Overcash v. Blue Cross and Blue Shield of North Carolina,* 94 N.C.App. 602, 615, 381 S.E.2d

330, 339 (N.C.App.1989) ("It is now clear that the right to a jury trial in federal court is governed by federal law even where the action arises under substantive state law"). Pursuant to federal law, the right to a jury trial can be waived by prior written contract if the agreement was made knowingly and voluntarily. *Leasing Serv. Corp. v. Crane,* 804 F.2d 828, 832 (4th Cir.1986); *K.M.C. Co., Inc. v. Irving Trust Co.,* 757 F.2d 752, 756 (6th Cir.1985); *National Equipment Rental, Ltd. v. Hendrix,* 565 F.2d 255, 258 (2d Cir.1977). The party seeking enforcement of the waiver must prove that consent was both voluntary and informed. *Leasing Serv. Corp. v. Crane,* 804 F.2d at 833. Such agreements are neither illegal nor contrary to public policy. However, courts should strictly and narrowly construe any waiver provision and give every reasonable presumption against waiver, since the right to a jury trial is fundamental. *See Aetna Ins. Co. v. Kennedy to Use of Bogash,* 301 U.S. 389, 393, 57 S.Ct. 809, 812, 81 L.Ed. 1177 (1937); *National Equip. Rental Ltd. v. Hendrix,* 565 F.2d at 258; *Wauhop v. Allied Humble Bank,* 926 F.2d 454, 455 (5th Cir.1991).

■ In considering whether the agreement to waive a jury trial was made knowingly and voluntarily, the court should consider the extent to which the contract was negotiated, the conspicuousness of the waiver, the relative bargaining power of the parties, the business expertise of the party opposing the waiver and whether the party opposing the waiver had counsel. *See Leasing Serv. Corp. v. Crane,* 804 F.2d at 833.

■ The Finance Agreement was negotiated by sophisticated and experienced businessmen who were represented by counsel. The record in this case reflects that Robert M. Sauls, the Chairman of the Board and the Chief Executive Officer of

CCG, previously served as the Chairman of the Board and Chief Executive Officer of Manufactured Homes, Inc., which filed for bankruptcy in 1991. Sauls was actively involved in the civil litigation in connection with the Manufactured Homes bankruptcy. Additionally, CCG was in the business of buying commercial paper and, as such, clearly understood the significance of various terms in loan documents. The court finds that Sauls had the necessary sophistication to understand the legal consequences of the jury waiver.

The court further finds that the parties were not manifestly unequal in their bargaining positions, as is reflected in the favorable terms of the loan including that all interest was treated as an advance and added to the principal balance on a monthly basis. The waiver is conspicuously set off in all capital letters in both the table of contents and the text of the Finance Agreement. Finally, the Plaintiff has offered no argument to support a finding that the jury waiver was not made knowingly and voluntarily. Therefore, the court concludes that the Plaintiff knowingly and voluntarily entered into the agreement to waive a jury trial and the agreement is valid and enforceable.

For the reasons discussed above, an Order will be entered contemporaneously with the entry of this Memorandum Opinion granting Fleet's motion to strike the Plaintiff's jury trial demand.