An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA12-1286
NORTH CAROLINA COURT OF APPEALS

Filed: 18 February 2014

ANNE BLANCHARD, Executrix of the
Estate of Mary Lou Barthazon,
deceased,
          Plaintiff,

     v.                                    Orange County
                                           No. 09 CVS 1109
BRITTHAVEN, INC., and HILLCO,
LTD.,
          Defendants.


     Appeal by defendants from orders entered 12 October 2011 and 8 May 2012 by Judge Shannon R. Joseph in Orange County Superior Court.  Heard in the Court of Appeals 23 May 2013.


          *Henson & Fuerst, P.A., by Anne Duvoisin; Connor & Connor, LLC, by Kenneth L. Connor; and Brian G. Brooks, Attorney at Law, PLLC, by Brian G. Brooks, for plaintiff-appellee.*

          *Hurley Law Office, by Michael C. Hurley and Katherine L. Jones, for defendants-appellants.*


     GEER, Judge.


     Defendants Britthaven, Inc. and Hillco, Ltd. appeal from the trial court's order awarding sanctions to plaintiff Anne Blanchard, Executrix of the Estate of Mary Lou Barthazon, and the trial court's subsequent order setting the amount of fees

and costs to be awarded as sanctions. Defendants primarily argue that the trial court was divested of jurisdiction over plaintiff's sanctions motion by various notices of appeal. Defendants argue that the trial court lacked jurisdiction to hear the sanctions motion, lacked jurisdiction to order sanctions, and lacked jurisdiction to enter an order setting the amount of fees and expenses to be awarded as sanctions.

After reviewing the issues encompassed by the sanctions motion and the issues involved in the other appeals, we hold that, under N.C. Gen. Stat. § 1-294 (2013), the trial court retained jurisdiction to conduct the proceedings and enter the orders. Because defendants' remaining arguments are either unpersuasive or not properly raised on appeal, we affirm.

## Facts

On 13 July 2009, plaintiff filed a wrongful death action against defendants alleging negligence by defendants in connection with their care for Ms. Barthazon at defendant Britthaven's nursing home in Chapel Hill, North Carolina. A more detailed description of the facts giving rise to plaintiff's lawsuit is set forth in this Court's opinion addressing plaintiff's appeal from the final judgment in *Blanchard v. Britthaven, Inc.*, ___ N.C. App. ___, ___ S.E.2d

___, COA12-1366 (2013), filed contemporaneously with this opinion.

On 18 June 2010, defendants filed a response to plaintiff's first set of interrogatories and request for production of documents. Plaintiff had requested, among other things, production of "[a]ll balance sheets, statements of assets and liabilities, federal and state income tax returns, and profit and loss statements for the Defendants for the period starting one year prior to the commencement of [Ms. Barthazon's] residency [at Britthaven] through the present" (the "financial documents"). Defendants objected to production of the financial documents and moved for a protective order prohibiting their discovery. On 13 July 2010, plaintiff filed a motion to compel production of the financial documents.

On 6 August 2010, in opposition to plaintiff's motion to compel, defendants filed an affidavit of Britthaven's Chief Financial Officer, Raymond J. Baker. Mr. Baker's affidavit stated that the financial documents sought by plaintiff were "highly confidential and proprietary to [defendants] and, with the exception of provisions of such confidential information to their outside legal counsel, accountants, and lenders, these documents are not disseminated to any persons and are kept in a secure and confidential location."

On 21 September 2010, plaintiff filed a second motion to compel defendants to produce the financial documents. On 28 December 2010, plaintiff served defendants with notices of deposition for Steven Farrar, the Chief Financial Officer of Hillco, and Mr. Baker, with each notice requesting production of "[a]ll Financial Statements" for defendants "and their subsidiaries or affiliates for the years including 2004 through 2010."

On 3 January 2011, plaintiff filed a third motion to compel production of the financial documents. On 12 January 2011, defendants filed an objection to plaintiff's requests for production in connection with the depositions of Mr. Farrar and Mr. Baker and a motion to quash the requests. On 3 June 2011, the trial court entered an order granting plaintiff's motion to compel production of the financial documents, subject to a previously entered protective order.

On 28 June 2011, defendants filed a notice of appeal from the trial court's 3 June 2011 order and from an unrelated 17 June 2011 discovery order. On 29 June 2011, defendants filed an amended notice of appeal, again appealing the 3 and 17 June 2011 discovery orders. On 6 July 2011, plaintiff filed a motion to disregard defendants' notice of appeal.

The transcript of a 6 July 2011 hearing on plaintiff's motion to disregard defendants' notice of appeal indicates that defendants had withheld production of the financial documents, as well as items at issue in the 17 June 2011 discovery order. Defendants confirmed at the hearing that they did not oppose plaintiff's motion to the extent that it "ask[ed] . . . that the Court retain jurisdiction and . . . ignore the notice of appeal and proceed with the case as if no appeal had been taken."

The trial court informed plaintiff that she had a choice: she could push back the trial date pending defendants' appeal -- giving her a chance to receive prior to trial the documents ordered produced in the appealed orders -- or she could proceed to trial on the set date without the discovery at issue. On 1 September 2011, the court entered an order granting plaintiff's motion to disregard defendants' appeal. The order provided that the motion was granted because "neither party sought a global stay of the case pending interlocutory appeal," and "Plaintiff elected to proceed to trial notwithstanding the appeal."

On 22 July 2011, plaintiff filed a motion for sanctions pursuant to Rules 26 and 37 of the Rules of Civil Procedure, "the Court's inherent authority," and Chapter 5A of the General Statutes. Plaintiff alleged that statements in Mr. Baker's affidavit concerning the financial documents were inaccurate or

misleading since plaintiff had recently learned that defendants' audited financial documents were filed annually pursuant to Virginia regulations and were generally available as Virginia public records. Plaintiff asserted that her expert, certified public accountant Brad Rush, had obtained defendants' audited consolidated financial statements for the years 2006 to 2010 through a Virginia public records request made on 24 June 2011. Plaintiff also contended that statements in an affidavit by defendants' in-house counsel, Erik Lindberg, were inaccurate or misleading regarding electronic information maintained by defendants, referred to as "Kronos" information. Finally, plaintiffs argued that defendants improperly withheld discovery by producing "data-less budgets" until the court re-ordered production and complete budgets were produced. At a 16 August 2011 pretrial hearing, the court stated it would take plaintiff's motion for sanctions under advisement.

On 23 September 2011, the jury returned a verdict in favor of defendants. The court entered a final judgment on 12 October 2011, which provided that the court retained jurisdiction "for the determination of taxable costs, and for the appropriate sanctions against Defendants." Also on 12 October 2011, the court entered an order granting plaintiff's motion for sanctions pursuant to Rule 37 and the court's inherent authority.

In the sanctions order, the court found that defendants knew or should have known after reasonable inquiry and diligence that the statement in Mr. Baker's affidavit concerning dissemination of the financial documents was not correct. Further, the misstatement related to a material issue: whether the documents were confidential and proprietary and should not be ordered produced. This finding was based in part on the fact that financial documents were filed with the Virginia agency, and the affidavit made no mention of filings with any governmental authorities. The finding was further based on the fact that there was no credible evidence that any reasonable inquiry or due diligence was made before Mr. Baker's affidavit was presented to the trial court or during the multiple discovery motions and hearings relating to the financial documents.

The court further found sanctions were proper based on the statements Mr. Lindberg made in his affidavit regarding the availability of the "Kronos" information for discovery. The court found the relevant statements were not false, but "at a minimum evince a materially incomplete inquiry into whether and how the Kronos information could be obtained; or an incomplete and somewhat misleading explanation of the situation."

Finally, the court found sanctions were appropriate based on defendants' production, in response to an order compelling production, of a disc containing budget information that did not show values in many fields where there should have been values. At a hearing on the adequacy of the budget information, defendants initially did not have an explanation for the problem, despite being on notice of the issue. Defendants then produced the complete budget information after intervention and inquiry by the trial court. The court observed that discovery mistakes should be remedied once brought to the attention of counsel and before court intervention and that defendants' conduct regarding the budgets showed a failure to reasonably and adequately respond to plaintiff's discovery requests.

Based on its findings, the court ordered defendants to pay the expenses, costs, and reasonable attorney's fees incurred by plaintiff (1) to pursue production of the financial documents ultimately obtained by the Virginia public records search, (2) to compel production of the Kronos information that was ultimately produced, (3) to compel and obtain production of the budgets, and (4) to prepare for and pursue plaintiff's 22 July 2011 motion for sanctions. The trial court's 12 October 2011 order left for later determination the precise amount of fees and expenses to be paid.

On 14 October 2011, defendants filed a notice of appeal from the sanctions order. On or about 13 January 2012, after the trial court denied plaintiff's motion for a new trial, plaintiff filed notice of appeal from the final judgment.

On 8 May 2012, the trial court entered an order addressing the sanctions amount to be paid. The court found that the proposed hourly rate of $475.00 for plaintiff's counsel, Anne Duvoisin, was supported by Ms. Duvoisin's affidavits and supporting affidavits and accepted that rate as reasonable. The court found, however, that the proposed hourly rate of $475.00 for Camille Godwin, one of plaintiff's other attorneys, was not sufficiently supported by Ms. Godwin's affidavit. The trial court noted that Ms. Godwin appeared to serve in the same capacity as defendants' associate counsel who, according to defendants' submissions related to the award of monetary sanctions, charged an hourly rate of $150.00. Based on Ms. Godwin's role as associate counsel, the court applied the $150.00 hourly rate for Ms. Godwin's time. Totaling attorney's fees, expenses, and costs, the court ordered defendants to pay the sum of $29,242.31. Defendants timely appealed the order setting the award of fees and costs for sanctions.

On 13 July 2012, plaintiff filed a motion to dismiss the appeal in COA12-664, the June 2011 appeal from the orders

compelling production. On 20 November 2012, this Court entered an order allowing plaintiff's motion to dismiss defendants' appeal in COA12-664: "The motion filed in this cause on the 13th of July 2012 and designated 'Motion to Dismiss Appeal' is allowed. Appellants' appeal from the two discovery orders is now moot. Appellants' appeal from the sanctions order is interlocutory, and the issues raised therein can be argued in appellants' subsequent appeal, COA12-1286, which is now pending." We now address defendants' appeal in COA12-1286.

I

Defendants first contend that, under N.C. Gen. Stat. § 1-294, their appeal in COA12-664 from the 3 June 2011 order compelling production of the financial documents divested the trial court of jurisdiction over plaintiff's motion for sanctions. N.C. Gen. Stat. § 1-294 provides in relevant part: "When an appeal is perfected as provided by this Article it stays all further proceedings in the court below upon the judgment appealed from, or upon the matter embraced therein; but the court below may proceed upon any other matter included in the action and not affected by the judgment appealed from."

Pursuant to N.C. Gen. Stat. § 1-294, "[w]hen a party gives notice of appeal from an appealable order, the trial court is divested of jurisdiction and the related proceedings are stayed

in the lower court." *Dalenko v. Peden Gen. Contractors, Inc.*, 197 N.C. App. 115, 121-22, 676 S.E.2d 625, 630 (2009) (per curiam). However, when a litigant appeals from a non-appealable interlocutory order, "a trial court is not divested of its jurisdiction to determine a case on its merits" and "is not required to stay the proceedings." *Id.* at 122, 676 S.E.2d at 630. In the latter case, the court "'may disregard the appeal and proceed to try the action[.]'" *Id.* (quoting *Velez v. Dick Keffer Pontiac-GMC Truck, Inc.*, 144 N.C. App. 589, 591, 551 S.E.2d 873, 875 (2001)).

There is no dispute in this case that defendants' appeal from the order compelling production of the financial records was interlocutory. However, defendants contend that the interlocutory order affected a substantial right, and, therefore, the order was properly appealable. *See Romig v. Jefferson-Pilot Life Ins. Co.*, 132 N.C. App. 682, 685, 513 S.E.2d 598, 600 (1999) ("A party may . . . appeal an interlocutory order 'if it affects a substantial right and will work injury to the appellant[] if not corrected before final judgment.'" (quoting *Perry v. Cullipher*, 69 N.C. App. 761, 762, 318 S.E.2d 354, 356 (1984))), *aff'd per curiam*, 351 N.C. 349, 524 S.E.2d 804 (2000).

Defendants assert that the order affected a substantial right since the financial documents were confidential, proprietary documents and, if defendants had complied with the order compelling production, "the damage from th[at] disclosure could not be undone." Defendants further assert that the order affected a substantial right because some of the financial documents -- tax returns -- were subject to a qualified privilege arising from a reasonable expectation of privacy.

Assuming, without deciding, that the order compelling production of the financial documents affected a substantial right and was properly appealable, defendants must still show that plaintiff's motion for sanctions and the trial court's 12 October 2011 sanctions order were matters "embraced" in the appeal from the order compelling production of the financial documents. *See* N.C. Gen. Stat. § 1-294.

Defendants argue that the order compelling production of the financial documents involved "the competency of" Mr. Baker's affidavit filed by defendants in opposition to plaintiff's motion to compel. Defendants then contend that because the sanctions order imposed sanctions based in part on an "inaccurate and misleading" statement in Mr. Baker's affidavit, the sanctions order involved a matter embraced by the order compelling production. We disagree.

The issues embraced by defendants' interlocutory appeal from the order compelling production of the financial documents included, according to defendants' counsel at a pretrial hearing following the appeal of the production order, whether the financial documents were privileged or otherwise discoverable, whether plaintiff's ability to obtain the documents from a Virginia public records search impacted their discoverability, and whether Judge Joseph improperly overruled an earlier discovery order by Judge Marvin K. Blount regarding production of the financial documents. By contrast, in the sanctions order, the trial court did not, in any way, address the nature of the financial records or whether they should be produced, but rather the order addressed the propriety of representations made to the trial court in filings with the court -- a matter not at issue in COA12-664. Under the specific facts of this case, the matters at issue in the sanctions motion were not embraced in the appeal, and, as a result, N.C. Gen. Stat. § 1-294 did not stay proceedings on the sanctions motion.

We also note that defendants' arguments in their brief and at oral argument touch upon the merits of the order compelling production of the financial documents. Defendants' appeal from that order has, however, previously been dismissed as moot. Further, with respect to the financial documents, defendants

were sanctioned for filing an inaccurate and misleading affidavit without reasonably determining whether the affidavit's statements were true. Defendants were not sanctioned for failing to comply with the order compelling production of the financial documents. Consequently, the merits of the order compelling production of the financial documents are not presently before this Court.

Defendants next argue that their appeal from the 12 October 2011 sanctions order and plaintiff's appeal from the final judgment each divested the trial court of jurisdiction over the remaining issue of the amount of fees and costs to be awarded as sanctions. With respect to defendants' appeal from the 12 October 2011 sanctions order, this Court has already issued an order, in COA12-664, determining that defendants' appeal from the sanctions order was interlocutory and dismissing the appeal from that order.

This Court's prior determination that the sanctions order was not appealable is binding here. *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."). Since defendant's appeal was from a non-appealable

interlocutory order, that appeal did not divest the trial court of jurisdiction to receive evidence pertaining to the amount of sanctions and to enter the order awarding fees and costs. *See Dalenko*, 197 N.C. App. at 122, 676 S.E.2d at 630.

With respect to plaintiff's appeal from the final judgment, it well established that the exception in N.C. Gen. Stat. § 1-294 for continued jurisdiction over matters not affected by the appealed judgment allows the court to continue to exercise jurisdiction over motions for sanctions as long as the matter does not depend upon the validity of the appealed order or judgment. *See Overcash v. Blue Cross & Blue Shield of N.C.*, 94 N.C. App. 602, 617, 618, 381 S.E.2d 330, 340 (1989) (holding "termination of the action and defendant's filing of notice of appeal did not automatically deprive the court of jurisdiction" over defendant's post-trial motion for sanctions, but "[s]ince the substantive basis of defendant's motion had been adjudicated in the earlier order, defendant's appeal therefrom divested the trial court of its jurisdiction to entertain the post-trial motion"). *Cf. McClure v. Cnty. of Jackson*, 185 N.C. App. 462, 471, 648 S.E.2d 546, 551 (2007) ("When, as in the instant case, the award of attorney's fees was based upon the plaintiff being the 'prevailing party' in the proceedings, the exception set forth in N.C. Gen. Stat. § 1-294 is not applicable."). Since

plaintiff's motion for sanctions did not depend upon the validity of the final judgment, the exception to N.C. Gen. Stat. § 1-294 is applicable here.

Defendants nonetheless cite *McClure* and *Swink v. Weintraub*, 195 N.C. App. 133, 672 S.E.2d 53 (2009), in support of their argument. In both of those cases, however, this Court concluded that the trial court lacked jurisdiction to impose an award of attorneys' fees following appeal from a judgment because the fee award was entered as a result of a party prevailing on the merits, a circumstance not present here. *See McClure*, 185 N.C. App. at 471, 648 S.E.2d at 551 (holding "exception set forth in N.C. Gen. Stat. § 1-294 is not applicable" since "award of attorney's fees was based upon the plaintiff being the 'prevailing party' in the proceedings"); *Swink*, 195 N.C. App. at 160, 672 S.E.2d at 70 (holding trial court lacked jurisdiction under N.C. Gen. Stat. § 1-294 to enter order taxing costs after appeal from judgment since "award of costs [was] directly dependent upon whether the judgment [was] sustained on appeal").

In sum, none of the prior notices of appeal stayed the proceedings on the sanctions matter. The trial court, therefore, properly exercised its jurisdiction over the sanctions matter throughout this case.

II

Defendants next argue that the trial court abused its discretion in ordering defendants sanctioned. "[T]rial courts have inherent authority to impose sanctions for wilful failure to comply with the rules of court." *Few v. Hammack Enters., Inc.*, 132 N.C. App. 291, 298, 511 S.E.2d 665, 670 (1999). The exercise of a court's inherent authority is reviewed for abuse of discretion. *Dunn v. Canoy*, 180 N.C. App. 30, 45, 636 S.E.2d 243, 253 (2006). Similarly, "[t]he imposition of sanctions under Rule 37 'is in the sound discretion of the trial judge and cannot be overturned absent a showing of abuse of that discretion.'" *In re Pedestrian Walkway Failure*, 173 N.C. App. 237, 246, 618 S.E.2d 819, 826 (2005) (quoting *Bumgarner v. Reneau*, 332 N.C. 624, 631, 422 S.E.2d 686, 690 (1992)).

Defendants first argue that "the trial court's finding that Baker [CFO of Britthaven], Farrar [CFO of Hillco], and Lindberg [defendants' in house counsel] *wrongfully failed* to *appear* at the Sanctions hearing is contradicted by the record" since "[t]he trial court refused Plaintiff's request to summon these witnesses to the hearing and granted Defendants' motion to the [sic] quash subpoenas issued to them for that purpose." (Internal record citations omitted.) Contrary to defendants' contention, however, the trial court never found that Mr. Baker,

Mr. Farrar, and Mr. Lindberg "wrongfully failed to appear at the Sanctions hearing." (Emphasis omitted.)

In the trial court's explanation of why sanctions were appropriate for the factually incorrect statement in Mr. Baker's affidavit about dissemination of the financial documents, the court found that defendants never produced evidence that reasonable inquiries had been made to ensure the affidavit was accurate. In noting the absence of evidence, the court pointed out that defendants had moved to quash the subpoenas issued to Mr. Baker and Mr. Lindberg compelling their testimony at the sanctions hearing.

The trial court further found that rather than bringing Mr. Baker and Mr. Lindberg to court, defense counsel represented that neither of those individuals knew how the financial documents had been filed in Virginia and, only after several calls, was defense counsel able to represent to the trial court that the documents had purportedly been filed by an outside accounting firm. The trial court's order for sanctions was, therefore, based on the "submission of misleading and inaccurate affidavit statements," resulting from defendants' inadequate inquiry prior to making the statements. Defendants' failure to produce witnesses at the sanctions hearing and their rationale for the motion to quash the subpoenas were pertinent to whether

defendants had any justification for the statements in the affidavits.

Defendants also contend that "the finding that Raymond Baker's statements in his affidavit were 'inaccurate and misleading' is not supported by the bare fact that Plaintiff's expert succeeded in obtaining financial statements from a state agency." (Internal record citation omitted.) In relevant part, the court found that Mr. Baker's affidavit contained a factual inaccuracy regarding dissemination of the financial documents since it omitted the fact that the financial statements were filed with government agencies or produced in other litigation.

The court's actual finding was supported by exhibits attached to plaintiff's motion for sanctions and admissions by defense counsel at the hearing. Given the evidence, we cannot conclude that the trial court abused its discretion in finding both that Mr. Baker's affidavit contained an inaccurate and misleading statement and that defendants had not shown they made a reasonable inquiry into whether Mr. Baker's statement was correct prior to filing his affidavit.

Defendants next argue that the trial court abused its discretion in sanctioning defendants based on the content of Mr. Lindberg's affidavit regarding discovery of the Kronos information. Defendants specifically dispute the trial court's

finding that even though the "statements were not false on their face," those statements "at a minimum evince a materially incomplete inquiry into whether and how the Kronos information could be obtained; or an incomplete and somewhat misleading explanation of the situation." Defendants do not challenge any of the order's other findings that supported this ultimate finding. The court's detailed supporting findings explain that Mr. Lindberg made the misleading statements in his affidavit about the accessibility of the Kronos information based upon only limited communications with a Britthaven employee. He did not fully explore with that employee the possible ways in which the information could have been obtained. The unchallenged supporting findings fully support the trial court's ultimate finding.

Defendants nonetheless assert that "the statements in Lindberg's Affidavit, executed 28 February 2010, were made based on his knowledge, information, and belief of the Kronos computer system at that time." Defendants further argue that "an affiant is required to have only personal knowledge, information, or a reasonable belief of the facts stated in the affidavit" and "is not required to have complete or infallible knowledge." However, defendants' arguments fail to recognize the actual basis for the trial court's concern regarding defendants'

conduct in discovery. As with Mr. Baker's statements regarding the financial documents, Mr. Lindberg also made statements that demonstrated that he had made "a materially incomplete inquiry" into the matter or was providing "an incomplete and somewhat misleading explanation of the situation." Thus, the court did not sanction defendants for failing to have "infallible knowledge," but rather for failing to adequately look into the matter prior to filing an affidavit making representations to the trial court.

Finally, defendants argue that the trial court abused its discretion in sanctioning defendants for their failure to produce the full budget information prior to repeated court intervention. Defendants challenge the trial court's finding that "[a]t the hearing, Defendants did not initially have any explanation for the [budget] problem, despite being on notice of the issue, and obtained the information and produced the correct information only after yet another intervention and inquiry by the Court." Defendants argue that this finding does not present "an accurate reflection of what actually occurred during that hearing."

At a 26 May 2011 hearing, plaintiff's counsel explained to the court that the budgets she received from defendants were missing information. Plaintiff's counsel stated she had

notified defendants of the problem. Upon the trial court asking why defendants had not cured the problem prior to the hearing and why plaintiff had to raise the issue with the court, defense counsel responded that he had "no excuse for that." Defense counsel then stated he could have an explanation for the problem shortly.

At a continuation of the hearing the next day, 27 May 2011, defense counsel explained that the issue leading to incomplete information in the budgets as produced resulted from the need for a certain macro on a computer system for the documents, and defendants' prior counsel had printed the documents from a computer without the necessary macro, leaving out the information that would otherwise have been present. Defense counsel further indicated that he had corrected the problem and would produce the complete budget information by the end of the day. Thus, the court's finding accurately reflects the events at the hearings.

Also with respect to the budgets, defendants argue that the trial court abused its discretion in stating at the 27 May 2011 hearing that it believed "the error with the budgets was due to a failure of Plaintiff's counsel and Defendants' counsel to communicate" and that the issue had been "'resolved,'" but

later, in the sanctions order, "revers[ing]" itself and ordering sanctions based on this issue. We disagree.

At the hearing, the court actually stated: "It sounds like it's resolved; seems like it took an awfully long time to get here; still have concerns about that; realize it may not be entirely present counsel's fault. . . . [I]t just seems to me to be a failure to communicate among counsel. And that's a problem. So that's a problem." The court's statement about "present counsel" refers to assertions by defense counsel that defendants' former attorney had mistakenly produced the budgets containing the missing data. In response to defense counsel's assertions that the issue may have received little attention since discovery of the budgets was not strongly contested by the parties, the court responded, "Then how did it get to me? . . . It's been pending for so long."

Thus, the court did not "reverse" itself by ordering sanctions pursuant to a matter that it had previously determined to be completely resolved. Rather, the court noted at the hearing that it believed the issue was attributable to a failure of counsel, including defense counsel, to communicate and that it was very concerned that defendants had failed to correct the issue, despite being on notice of it, before further court intervention was necessary.

Each of the findings of fact challenged by defendants are supported by evidence or other unchallenged findings. Given those findings, defendants have not shown that the trial court abused its discretion in deciding that defendants should be sanctioned.

### III

Defendants next argue that the trial court's entry of the sanctions order violated their constitutional rights in a number of ways. Defendants first argue that the trial court violated their due process rights by sanctioning them for matters embraced by their pending appeal of the order compelling production of the financial documents despite the trial court's acknowledgement at the 6 July 2011 hearing that the order compelling production was automatically stayed pending appeal pursuant to N.C. Gen. Stat. § 1-294.

Initially, we note that defendants cite no authority in support of this argument, thereby violating Rule 28(b)(6) of the Rules of Appellate Procedure. In any event, we have already held that the court's sanctions order did not pertain to matters "embraced" within the appeal from the order compelling production of the financial documents. N.C. Gen. Stat. § 1-294. Even if defendants' due process rights could be implicated by a

violation of the stay set out in N.C. Gen. Stat. § 1-294, no violation occurred in this case.

Defendants next contend that the sanctions order violated their due process rights given "the inordinate and unexplained delay in the issuance of the order awarding sanctions." Defendants assert that the timing of the order demonstrates that the trial court used the sanctions order "as a consolation prize for a plaintiff disappointed by the jury's verdict." Defendants again cite no authority in support of their contention, and we decline to address a claimed constitutional violation when defendants have not considered the argument important enough to warrant even minimal research.

Defendants further argue that the trial court's entry of the sanctions order violated their constitutional rights on three additional grounds related to (1) defendants' claim (already found unsupported) that the trial court sanctioned defendants for failing to produce witnesses at the sanctions hearing; (2) the trial court's "refus[ing] to hear Mr. Baker's offer of proof" at the trial following the sanctions hearing; and (3) the trial court's violation of "Defendants' constitutional right to due process and equal protection of the law by making findings based on matters outside the record of which Defendants had been given no notice or an opportunity to

be heard, including hearsay related to motions filed in the *Hopper* case and Defendant's [sic] alleged failure to comply with orders by other judges."

Defendants did not make any of these three additional constitutional arguments to the trial court. Moreover, defendants cite no authority in support of the second and third additional constitutional arguments, in violation of Rule 28(b)(6) of the Rules of Appellate Procedure.

"A constitutional issue not raised at trial will generally not be considered for the first time on appeal." *Anderson v. Assimos*, 356 N.C. 415, 416, 572 S.E.2d 101, 102 (2002) (per curiam). *See* N.C.R. App. P. 10(a)(1) (providing that, in order to preserve argument for appeal, party must present to trial court "a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make"). Since defendants did not raise these constitutional issues below, they cannot now argue them on appeal.[1]

Finally, although not set out in their brief, defendants raised an additional due process issue at oral argument before this Court, asserting that the trial court's failure to enter the sanctions order until after entry of final judgment

---

[1]We note, in passing, however, that defendants' articulation of what the trial court did is not necessarily consistent with what appears in the actual record.

necessarily precluded the trial court from considering lesser sanctions that would otherwise have been available. Since this argument was not raised in defendants' brief, defendants cannot properly raise it for the first time at oral argument. *See Atl. Coast Line R.R. Co. v. Beaufort Cnty.*, 224 N.C. 115, 119, 29 S.E.2d 201, 203 (1944) ("No such contention appears to have been made in court below, and none is made in [sic] brief filed in this Court. Hence, oral presentation of it comes too late, and the point may not now be raised in this Court.").

Moreover, the argument was not made in the trial court. Defendants claim they did not have the chance to make this argument to the trial court since the court held no additional hearing on the sanctions matter after trial began and did not give defendants notice prior to entering the sanctions order. However, defendants filed an objection to the sanctions order, after entry of the sanctions order and prior to entry of the order setting the award of fees and costs for sanctions, arguing to the trial court that entry of the sanctions order violated their due process rights in a number of other ways. Defendants' own filing, therefore, belies their argument that they had no opportunity to present this issue to the trial court. Because the issue was neither preserved at the trial level nor

appropriately argued on appeal, it is not properly before this Court.

IV

Defendants' final argument is that "the trial court abused its discretion when it set the hourly rate of compensation for the legal services of Plaintiff's counsel, Anne Duvoisin, at $475 per hour." Defendants assert that Ms. Duvoisin functioned primarily in a second-chair capacity during trial and that since defendants' lead counsel's hourly rate is $175.00 and defendants' associate counsel's hourly rate is $150.00, there was no reasonable basis for the court's finding.

We initially note that defendants presented no actual evidence in the trial court of defendants' lead counsel's or associate counsel's hourly rates. Our review of the record has revealed only that, in an unverified responsive filing by defendants entitled "defendants' objection and response to plaintiff's affidavits in support of monetary sanctions," defendants made representations regarding defense counsel's hourly rates. However, the assertions in this filing were not evidence, and defendants did not attach any affidavits or other evidence concerning these hourly rates.

The trial court's findings on the reasonableness of attorney's fees must be supported by some evidence. *Simpson v.*

*Simpson*, 209 N.C. App. 320, 325, 703 S.E.2d 890, 893 (2011). To that end, the court may take judicial notice of the reasonableness of fees unless it "determines that it lacks the necessary knowledge or that the customary hourly rate is in fact subject to debate in the community." *Id.* at 328, 703 S.E.2d at 895.

Here, the trial court observed the trial and was in a position to determine Ms. Duvoisin's role at trial. Defendants cite no authority supporting their contentions regarding the hourly rates awarded and, therefore, have cited nothing that suggests that Ms. Duvoisin's hourly rate should be set at the level of a lesser experienced associate. Further, defendants neither offered evidence of the hourly rates that they argue on appeal would have been appropriate nor did they request that the trial court take judicial notice of those hourly rates. There is, however, no dispute that affidavits submitted by Ms. Duvoisin -- the only evidence before the court on this issue -- supported the hourly rate set by the court.

Defendants also argue that the court abused its discretion in setting Ms. Duvoisin's hourly rate in light of the court's findings regarding the hourly rate of another one of plaintiff's attorneys, Ms. Godwin. The court rejected the hourly rate of $475.00 proposed in Ms. Godwin's affidavit, finding that "the

Court does not have sufficient information to determine whether the rate of $475.00 is the customary fee for like work and the experience and ability of Ms. Godwin."[2]  The court further found that Ms. Godwin "appeared to function in the same role as did associate counsel for the defense who, according to Defendants' Objections and Response to Plaintiff's Affidavits, charges an hourly rate of $150.00."  The court, "[b]ased on that role," applied a $150.00 hourly rate for Ms. Godwin's time.

Defendants do not challenge Ms. Godwin's fee, and her affidavit provides no evidence that the hourly rate set for Ms. Duvoisin was unreasonable.  We, therefore, hold that the trial court did not abuse its discretion in setting Ms. Duvoisin's hourly rate, and we affirm the trial court's order.

Affirmed.

Judges ELMORE and DILLON concur.

Report per Rule 30(e).

---

[2]We note that Ms. Godwin's affidavit was significantly shorter than Ms. Duvoisin's affidavit and, unlike Ms. Duvoisin's affidavit, was not supported by additional affidavits by other attorneys.